RUFF, respondent, *v.* RADER, appellant.

JURORS FORMING OPINIONS GUILTY OF CONTEMPT. Persons, who have been summoned to attend court as jurors, commit a contempt of court by talking with litigants and forming an opinion upon the merits of their cases.

FACTS RENDERING A JUROR INCOMPETENT. A juror testifies, when examined respecting his qualifications to serve, that he has formed an opinion concerning the merits of a case by talking with one of the parties and believing what he said regarding it; that he cannot say that it is an unqualified opinion; that sufficient evidence would change his opinion; that he thinks he can render an impartial verdict; and that his opinion is dependent upon the truth of what he had heard. *Held,* that said juror is not competent to sit in the trial of the case.

AN "UNQUALIFIED OPINION" BY JURORS. A juror, who hears and accepts as true the statement of a case by a party or witness, forms an "unqualified opinion" within the meaning of the 198th section of the Civil Practice Act.

EXAMINATION OF WITNESSES — *leading question.* The following question is not leading: "State if, at any time during the summer of 1872, you had any transaction relative to the sale of a cabin to the plaintiff; if so, state what such transaction was?"

PRACTICE — *error cured by subsequent ruling.* The error of the court in excluding a question propounded to a witness, is cured by allowing the witness to answer another question of the same character.

CASE AFFIRMED. The case of *Isaacs* v. *McAndrew,* 1 Mon. 437, holding that claims for labor do not bear interest, unless there has been unreasonable and vexatious delay, affirmed.

*Appeal from First District, Jefferson County.*

THE cause was tried before SERVIS, J.

CHUMASERO & CHADWICK, and A. G. P. GEORGE, for appellant. The court erred, in impaneling the jury, in refusing to allow

the twelve jurors to be sworn generally as to their competency. Civ. Pr. Act, §§ 197–199; *Watson* v. *Whitney*, 23 Cal. 378.

The court erred in overruling the appellant's challenges to jurors who disclosed, by their answers, that they were not qualified. Civ. Pr. Act, § 198; *White* v. *Moses*, 11 Cal. 68.

The court should have compelled respondent to elect whether he would rely upon an express contract or a *quantum meruit*. *Simonton* v. *Kelly*, 1 Mon. 366.

The court erred in refusing to allow appellant to ask the question relating to the sale of the cabin. The question is proper in form and substance. The court erred in dictating a question of its own.

The court erred in allowing the jury to compute the interest on the amount found due. The pleadings and evidence show that respondent was not entitled to interest.

Page & Coleman and G. F. Cowan, for respondent.

In selecting a jury in a civil action, challenges to the favor were not allowed at common law to the extent authorized by our statute. 3 Bl. Com. 363. Our statute, which increases the number of such challenges, is in derogation of the common law and must be strictly construed. The court should overrule such challenge to a juror unless proof is made to the court by the favor, or otherwise, that the juror is plainly within the statute. Civ. Pr. Act, § 198. Not one of the jurors challenged is within the statute.

The question as to when interrogatories may be leading is within the sound discretion of the court, and is not ground of error on motion for a new trial. 1 Greenl. Ev., §§ 435, 437; 2 Phillips' Ev. 891, n. 570. The refusal to allow the question worked no injury to appellant.

Wade, C. J. The questions presented by this record relate, principally, to the impaneling of the jury.

1. It appears by the bill of exceptions that a jury of twelve persons was called and took their seats in the jury box, whereupon the defendant, by his counsel, and before any challenge had been made, requested the court that the jurors be sworn to answer

questions touching their qualifications and competency as jurors in the cause, which request was refused, for the reason, as it appears, that only such jurors should be sworn as to competency as were challenged for cause, and that this challenge should be made without any preliminary examination. This action of the court is assigned as error.

Among other challenges to jurors at common law, were challenges *to the favor*, where a party objected to some probable circumstance of suspicion, as acquaintance and the like, the validity of which was left to the determination of *triors*. Our statute has preserved this right to the parties, and provides that challenges for cause may be taken upon the following grounds. Cod. Sts. 66, § 198.

\* \* "Sixth. Having formed or expressed an unqualified opinion or belief as to the merits of the action. Seventh. The existence of a state of mind in the juror evincing enmity against, or bias to, either party.".

This is but the common law enacted into a statute, and is one of the safeguards thrown around a party when he comes into court, which protects him alike from the dangers resulting from the preconceived opinion which sometimes resists and defies the strongest evidence, and from that enmity or prejudice against, or bias in favor of, either party which invariably inclines us to reward our friends and to punish our enemies when clothed with a little brief authority, or at least so blinds and distorts our judgment that its conclusions are liable to be erroneous.

This bias or prejudice may exist and control the mind of the juror, and he be entirely unconscious of it, and for this reason the law presumes it to exist in certain cases, as consanguinity and the like, and disqualifies the juror without any inquiry whatever. And the law also guards the party against the preconceived opinions of the juror, for though he may declare that he has formed an opinion in the case, from hearing the facts and circumstances stated by a party or a witness, but that he can put away this opinion and try the cause upon the testimony as it is produced in court; yet if he believes the facts upon which his opinion is founded, he has no business in the jury box. Men may put away their opinions, if such a thing were possible, but opinions once

formed, even though erroneous, cling to us and exert an influence when we do not know it, and it requires much more testimony to eradicate and re-form them correctly than would be necessary if the subject were entirely new. That is to say, a juror, with an opinion already formed in a case, would not be likely to arrive at the same results, upon the same testimony, as if he had no opinion when the testimony was presented. It must require some testimony to remove the opinion already formed, and the amount necessary for this purpose will depend upon the nature of the belief upon which the opinion is founded. And to permit a juror to remain in the box with an opinion already formed as to the merits of the case, would require a party to overcome not only the testimony of his opponent, but he must also destroy the preconceived judgment of the man who is to render a decision in the cause, and such a task, in the majority of cases, would be entirely hopeless.

But the question herein presented is: How shall the party ascertain whether or not the juror has formed or expressed an opinion in the case, or whether or not he has such an enmity against or bias toward either party as would disqualify him under the statute? No statute in the Territory expressly requires the jury to be sworn to answer touching their qualifications or competency as jurors, yet a practice has universally prevailed here, ever since the organization of the Territory, in the formation of a jury, to call twelve men into the box, and have them sworn to answer concerning their competency to serve as jurymen in the cause then pending. This is not the precise mode of the common law, but the same result is reached, and each juror is put upon his oath concerning his bias or prejudice, his opinions, his interest, etc. And this practice seems to be contemplated by the statute. The party is given the right to challenge for cause in certain cases, and upon certain grounds. How is he to ascertain the existence of the grounds for challenge until he has examined the juror upon his oath, and how is he to learn that each juror is qualified, and not incompetent, until he has inquired of each one separately and singly as to his qualifications? If a juror has formed an unqualified opinion as to the merits of the case, or, if he is biased toward or prejudiced against either party, how can

this be made to appear until he is examined upon his oath, concerning his opinions, and touching his state of mind toward either party? Must he blindly guess that certain jurors in the box have formed their opinions, or are biased or prejudiced, and challenge them for these causes, and then have an examination? The formation of opinion, or the bias, prejudice or enmity may be entirely unknown to either party until disclosed upon the examination, and, if the challenge must precede the examination, a jury thus impaneled might be composed of men entirely disqualified, and neither party would have the means of showing the fact. Suppose, again, that the juror is interested in the event of the action, or in the main question involved therein, or that he is related within the third degree to either party, or that he stands in the relation of master or servant, employer or clerk, principal or agent to either party; or is a partner in business with either party, a silent partner for instance; or is a member of the family of either party, or is security on any bond or obligation for one party or the other, how are any one or all these things to be known until an examination is had? The existence of any one of these facts disqualifies the juror by the terms of the statute, and yet, unless each juror is examined upon his oath touching these matters, a jury might be made up of men not entitled to serve in that capacity. If the challenge must precede the examination, then the only safe course in practice would be to challenge each juror separately for each cause of challenge enumerated in the statute. The much better practice, and the only safe mode of proceeding, is to administer an oath generally, to the twelve men in the jury box, to answer such questions as may be put to them concerning their competency as jurors in the cause then pending, and, if such examination discloses a cause for challenge, then is the proper time to exercise the right.

2. The next question pertains to the qualifications and competency of a juryman, and it arose in this manner, as shown by the record: The defendant challenged one White, a juryman called in the cause, who, being sworn, after challenge, and examined, testified as follows: " I have formed and expressed an opinion as to the merits of the action; cannot say whether it is an unqualified opinion or not; I have talked with the plaintiff both before

and since the commencement of this suit, and during this term of the court; from what he and others told me about the case, I formed my opinion; my opinion might be changed by sufficient evidence; my mind is so now that I think I could render an impartial verdict; it would take considerable evidence to remove my opinion; the conversation I had with plaintiff during this term of court was, that he wanted me as a witness, and asked me if I did not know he was a good hand to work." The defendant then challenged the juror for cause. Whereupon the court asked the juror whether or not his opinion depended upon the truth of what he heard. The juror answered that it did, and further stated that he *believed* what the plaintiff had told him about the case. The court then overruled the challenge, and the defendant excepted. Five other jurymen were challenged for cause by the defendant, and their examination disclosed a similar state of facts as the examination of the juryman White, showing that they had formed an opinion in the case, from talking with the plaintiff before or during the term of court, and that they believed what the plaintiff had said to them about the case, which challenges were overruled and exceptions saved.

Before entering upon a discussion of the questions herein, we wish to say that jurors summoned to attend court in that capacity, who will talk with parties having causes for trial about their causes, and thereby form an opinion of the merits of the cause, are guilty of contempt of court, and should receive the highest punishment therefor, and a party who would approach a juror and talk with him out of court about his case, is likewise guilty of contempt, and should be punished accordingly. Such conduct shows corruption of the gravest character, or gross ignorance, amounting to criminality.

The examination of these jurors as to their competency showed that they had formed an opinion as to the merits of the case, by listening to what the plaintiff had said to them concerning it, and that they believed what the plaintiff had said, but that their opinions depended upon the truth of the plaintiff's statement. Were they competent, under our statute, to hear and determine the case upon the testimony? They enter the box with an opinion as to the merits of the case, formed from statements of the plaintiff made

to them out of court, which statements they believed to be true, and declaring that it would require considerable testimony to remove the opinions they had formed. In other words, they had tried the case out of court, and had their minds made up as to how it should be decided, but were willing to be convinced that the plaintiff's statements were untrue, although they did not doubt their absolute truth.

The human mind is so constituted, and we cling so tenaciously to our first impressions and formed opinions, that, under the circumstances disclosed, the trial in court would almost invariably result in the same decision as the former trial out of court, no matter how overwhelmingly the testimony might preponderate against it. But we wish to test the competency of these jurors by the requirements of the statute. The 198th section of the Code provides that either party may challenge jurors for cause, if they have formed or expressed an unqualified opinion or belief as to the merits of the action, and in order to try these jurors as to their competency under the statute, we must first determine *what is an unqualified opinion or belief.*

These jurors testify that they had heard the plaintiff state his case, that they *believe* his statements to be true, and thereupon formed their opinion. Were such opinions qualified or unqualified? What is an unqualified opinion? We form opinions from what we see and what we hear. We arrive at conclusions, reasoning from what we know, or believe we know. Opinions and beliefs are formed by reflection. Certain facts are believed to exist, and our opinions are the conclusions resulting therefrom, and if we implicitly believe the facts, our conclusions or opinions derived therefrom are unqualified; but if we doubt the facts, our conclusions are likewise doubtful and our opinions qualified to this extent. We do not know much of any thing absolutely. Very few of our opinions are derived from perfect knowledge, and if only such knowledge produced unqualified opinions, then most of our conclusions would be tainted with doubt. But an absolute belief in the truth of certain facts makes them true to us, however unreasonable and untruthful they may be to others, and our opinions formed therefrom must partake of the same character as our belief in the facts, and therefore be absolute and

unqualified. So then we say that an implicit, undoubting belief in a statement purporting to be fact necessarily engenders an unqualified opinion, while a doubt as to the fact causes the opinion to be qualified.

The opinions of mankind depend upon their belief or disbelief, and however erroneous the belief may be, yet the opinions resulting therefrom are qualified or unqualified, as is the belief in the facts upon which the opinion depends. · The absolute truth or falsity of the alleged facts is not material. What we undoubtingly believe is true to us, however false it may be to others. An unqualified, undoubting belief in certain supposed facts, therefore, makes an unqualified opinion thereon ; the latter results necessarily from the former, and although the opinion may be all wrong in the absolute, nevertheless it is true to us and unqualified, if we believe in the facts upon which it rests. Therefore, a juror hearing a statement of a case from a party or a witness, and believing the same to be true, and having no doubts as to the verity of the statement, must necessarily form an unqualified opinion as to the merits of such case, and an opinion thus resulting, and thus formed, disqualifies him, for the reason that before entering the box he has already tried the case in his own mind and determined it to his own satisfaction, and very likely, when he heard the testimony in court, would undertake to make the same harmonize with his opinion already formed.

Applying this to the jurors who had testified that they had formed an opinion in the case ; that they had heard the statements of the plaintiff, and did not doubt the truth of what he said to them, and thereupon formed an opinion as to the merits, and we do not question that such jurors were incompetent to serve in the case ; and the statement of the jurors that their opinions depended upon the truth of what the plaintiff told them, does not change or vary the application of the rule, since they further state *that they did in fact believe* the statements of the plaintiff.

3. This was an action brought by the plaintiff to recover for work and labor performed by the plaintiff for defendant, under and by virtue of a certain contract between the parties.

The defendant, in his answer, among other things, set up a counter-claim, and alleged that the plaintiff was indebted to him

in the sum of $40, by reason of a certain cabin sold and delivered to the plaintiff by the defendant, to which the plaintiff replied, denying that he purchased a cabin of defendant, and denying any indebtedness on account thereof.

During the progress of the trial, the defendant was sworn as a witness, and the following question propounded to him by his counsel: "State if at any time during the summer of 1872 you had any transaction relative to the sale of a cabin to the plaintiff; if so, state what such transaction was?" The plaintiff objected to the question, upon the ground that it was leading, and the court, understanding the same to be leading, sustained the objection, and directed the counsel what question to put, to which ruling of the court there was an exception.

Directing our attention to the issue being tried, which was whether or not the defendant had sold to the plaintiff a certain cabin, we can see no possible objection to the question asked the witness. It is not leading; it does not suggest any answer; it does not assume any fact to exist which is in controversy; it cannot be answered by a simple affirmation or denial; it was pertinent to the issue being tried. It directed the attention of the witness to the subject upon which he was to speak, and this is always proper, but we cannot discover wherein the answer sought, is suggested, or by what rule the question is leading.

Under certain circumstances leading questions may be put by direction of the court, and this action cannot be assigned as error, but that is not this case. Here we understand the record to state that the question was excluded because of its leading character. The reason for its exclusion is wholly immaterial, if it was properly excluded, but we hold that the question was pertinent to the issue, and proper in form, and, being so, the counsel had the right to put it in his own language without dictation from the court. The proof must correspond with the averment, and support it, and the question propounded tended directly to this result, and was unobjectionable in form. But no error occurs in this branch of the case, for the record shows that the court permitted and directed the witness to answer a question of precisely the same import and character as the one objected to. A case can only be

reversed for substantial errors, and not by virtue of astute catch-penny tricks of counsel.

4. As to the computation of interest upon the amount found due from defendant to plaintiff, the case is controlled by that of *Isaacs* v. *McAndrew,* 1 Mon. 437, where it is held that indebtedness of this character does not bear interest under the peculiar wording of our statute.

For these reasons the judgment below is reversed, and the cause remanded for a new trial.

*Judgment reversed.*

KNOWLES, J.   I concur in the opinion as to the second and third points discussed therein. As to the first point, I express no opinion.

SERVIS, J.   I dissent from the holding of the court as to the first proposition, and concur in the remainder.