No. 96-124

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 152

STATE OF MONTANA,

Plaintiff and Respondent,

v.

MYRON JAMES BELGARDE

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

The Honorable Robert J. Boyd, Judge presiding

COUNSEL OF RECORD:

For Appellant:


Jack H. Morris, Whitehall, Montana


For Respondent:


Joseph P. Mazurek, Attorney General, Pamela P. Collins, Assistant Attorney General, Helena, Montana; Valerie Wilson, Jefferson County Attorney, Boulder, Montana


Submitted on Briefs: September 11, 1997


Decided: June 16, 1998

Filed:


_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

**¶1 Defendant Myron Belgarde (Belgarde) appeals from the sentence and judgment of the Fifth Judicial District Court, Jefferson County, entered after a jury convicted him of driving while under the influence of alcohol, as well as from the District Court's denial of both his motion to dismiss and motion to suppress. We affirm.**

**¶2 We restate the following issues on appeal:**

**¶3 1. Did the District Court err in denying Belgarde's motion to dismiss for the**

State's failure to preserve exculpatory evidence in the form of a videotape made at the time of his arrest?

¶4 2. Did the District Court err by denying Belgarde's motion to suppress statements he made at the time of his arrest and prior to being given his *Miranda* warnings?

¶5 3. Is Belgarde entitled to a new trial due to the State's alleged failure to disclose a document contained in the court record?

## FACTUAL AND PROCEDURAL BACKGROUND

¶6 On May 29, 1995, Officer Mitch Tuttle, a Montana Highway Patrol Officer, was on patrol in Jefferson County, near Boulder, Montana. At approximately 2:45 a.m., Officer Tuttle was traveling south on Interstate 15 towards Boulder when he observed Belgarde traveling north at a high rate of speed. Officer Tuttle activated his radar unit and obtained a speed of 82 miles per hour. In response, Officer Tuttle drove through the median, activated his overhead lights and pursued Belgarde for almost four miles; however, Belgarde did not slow down or stop. After Officer Tuttle activated his siren, Belgarde stopped and pulled his vehicle over to the side of the road at an angle so that the vehicle's left rear corner failed to clear the fog line and remained in the lane of traffic.

¶7 Upon approaching Belgarde, Officer Tuttle noticed the smell of alcohol. Concerned that Belgarde was driving while under the influence of alcohol, Officer Tuttle asked Belgarde to come back to the patrol car. Belgarde took a seat in the front of the patrol car where Officer Tuttle further noticed that Belgarde had bloodshot eyes and slurred speech. Officer Tuttle administered the Horizontal Gaze Nystagmus test (HGN test) which Belgarde failed. After completing the HGN test, Officer Tuttle arrested Belgarde and transported him to the Jefferson County Sheriff's Department.

¶8 Upon arrival at the Jefferson County Sheriff's Department, Officer Tuttle drove the patrol car into the "sally port," or garage, and the door shut behind him. Officer Tuttle exited the patrol car, retrieved Belgarde from the passenger side and escorted him to the entrance of the jail facility. In the booking area, Belgarde failed to perform the walk-and-turn test and refused to perform the one-legged stand test. After reading to Belgarde Montana's implied consent advisory form, Officer Tuttle

asked Belgarde to take a breath test, which Belgarde refused to do. Subsequently, Officer Tuttle read Belgarde his *Miranda* rights which Belgarde refused to waive, responding that he wished to have an attorney present.

¶9 The Jefferson County Sheriff's Department has video cameras to record activities occurring in both the sally port and the booking area. A video camera is activated when a patrol car enters the sally port and records when someone exits the patrol car and proceeds to the door of the booking area. After leaving the sally port area, a second camera, located in the booking area, is to be activated by a Sheriff's Department employee. Here, the sally port videotape of Belgarde, which showed him exiting Officer Tuttle's patrol car and walking behind the car into the booking area, was erased except for a one or two-second recording of the patrol car in the sally port. Furthermore, the video camera in the booking area was never activated, and, consequently, Belgarde was not videotaped during the booking process.

¶10 Belgarde was charged in Justice Court with driving a motor vehicle while under the influence of alcohol (DUI) in violation of § 61-8-401, MCA; driving with a suspended license in violation of § 61-5-212, MCA; and operating a motor vehicle without current liability insurance in violation of § 61-6-301, MCA. Represented by counsel, Belgarde entered pleas of not guilty to all charges and requested a jury trial. Thereafter, Belgarde filed various motions including a motion to dismiss his DUI charge because the State failed to preserve exculpatory evidence in the form of a videotape made during the booking process and a motion to suppress any statements made prior to being advised of his *Miranda* rights. Additionally, Belgarde changed his plea to guilty for the charges of driving with a suspended license and driving without liability insurance. Subsequently, the Justice Court granted Belgarde's motion to dismiss his DUI charge because he was denied exculpatory evidence.

¶11 The State appealed the Justice Court's order dismissing Belgarde's DUI charge to the Fifth Judicial District Court, Jefferson County, where Belgarde requested a jury trial and renewed his motion to dismiss and his motion to suppress. On January 29, 1996, following briefing and a hearing, the District Court denied a number of pretrial motions including Belgarde's motion to dismiss and his motion to suppress. Subsequently, a jury trial was held on January 31, 1996, and Belgarde was found guilty of DUI, in violation of § 61-8-401, MCA. Thereafter, the District Court sentenced Belgarde to six months imprisonment in the Jefferson County Jail, with all but thirty days suspended, imposed numerous fees and conditions, and stayed

imposition of his sentence pending appeal. From the District Court's sentence and judgment as well as the court's denial of both his motion to dismiss and motion to suppress, Belgarde appeals.

## DISCUSSION

¶12 1. Did the District Court err in denying Belgarde's motion to dismiss for the State's failure to preserve exculpatory evidence in the form of a videotape made at the time of his arrest?

¶13 The District Court denied Belgarde's motion to dismiss his DUI charge holding that the State was under no duty to make a videotape in the booking room, and, further, that Belgarde failed to show what, if any, exculpatory evidence had been destroyed. A district court's grant or denial of a motion to dismiss in a criminal case is a question of law which we review *de novo*. *State v. Brander* (1996), 280 Mont. 148, 151, 930 P.2d 31, 33.

¶14 Citing *State v. Swanson* (1986), 222 Mont. 357, 722 P.2d 1155, Belgarde argues that the District Court erred by denying his motion to dismiss his DUI charge. Belgarde concedes that the State had no duty to assist him in obtaining exculpatory evidence. Nonetheless, Belgarde asserts that, just as in *State v. Halter* (1989), 238 Mont. 408, 777 P.2d 1313, the court should have granted his motion because the State violated his due process rights by failing to preserve videotaped evidence of his demeanor during the booking process.

¶15 The State responds that the State had no duty to videotape Belgarde's booking process, and, therefore, the failure to do so did not violate Belgarde's due process rights. The State further responds that Belgarde does not assert and no evidence exists that the erasure of the videotape of Belgarde in the sally port of the Sheriff's Department was done deliberately; that the videotape was material; or that he was prejudiced by the erasure. Therefore, the State argues that the District Court properly denied Belgarde's motion to dismiss. We agree.

¶16 A criminal defendant has a constitutional right to obtain exculpatory evidence and denial of this right is a violation of due process. *State v. Sadowski* (1991), 247 Mont. 63, 79, 805 P.2d 537, 546. Nevertheless, this right is only a personal right, and, therefore, police officers are not required to take initiative or even assist the

defendant with procuring evidence on his own behalf. *Sadowski*, 247 Mont. at 79, 805 P.2d at 546. However, while the police do not have an affirmative duty to gather exculpatory evidence, the police may not frustrate or hamper an accused's right to obtain exculpatory evidence. *State v. Heth* (1988), 230 Mont. 268, 272, 750 P.2d 103, 105. We further explained in *Heth*:

> Only a deliberate or intentional suppression of exculpatory evidence is a per se violation of due process. To amount to a denial of due process, negligently suppressed evidence must be vital to the defense. It must be more than a mere suppression, in that the defense must show the evidence was material and of substantial use. Finally, the evidence must be exculpatory meaning it "[w]ould have tended to clear the accused of guilt, to vitiate a conviction." *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *State v. Patterson* (1983), 203 Mont. 509, 512-13, 662 P.2d 291, 293.

*Heth*, 230 Mont. at 272, 750 P.2d at 105.

¶17 Here, the sally port videotape of Belgarde, which showed him exiting Officer Tuttle's patrol car and walking behind the car into the booking area, was erased except for a one or two-second recording of the patrol car in the sally port. Furthermore, the video camera in the booking area was never activated, and, consequently, Belgarde was not videotaped in the booking room. Therefore, the issue in the case at bar involves both the State's failure to "preserve" evidence as well as the State's failure to "gather" evidence. That is, police officers at the Sheriff's Department failed to "preserve" evidence when they erased the videotaped recording of Belgarde in the sally port, and, furthermore, they failed to "gather" evidence when they failed to activate the videotape camera in the booking room during Belgarde's booking process. We explained the significance of this distinction in *Heth*.

¶18 Heth was arrested for drunk driving. During his booking process, police officers activated a videotape camera but failed to turn on the volume. *Heth*, 230 Mont. at 269-70, 750 P.2d at 104. Relying on *State v. Swanson* (1986), 222 Mont. 357, 722 P.2d 1155, Heth argued that he was denied due process because the audio portion of the tape may have contained exculpatory evidence providing him with a valid defense to the charge of drunk driving, and, therefore, the District Court erred in denying his motion to dismiss. *Heth*, 230 Mont. at 270, 750 P.2d at 104. In response, we explained that while *Swanson* stood for the proposition that an accused has a constitutional

right to obtain exculpatory evidence, *Swanson* did not stand for the proposition that police officers had a duty to assist in gathering exculpatory evidence for an accused. *Heth*, 230 Mont. at 271, 750 P.2d at 104.

¶19 Pointing out that a difference existed between "gathering" and "preserving" exculpatory evidence, we explained that the police officers in *Swanson* failed to properly "preserve" the exculpatory evidence of Swanson's blood alcohol level that he had procured through an independent blood test after his DUI arrest and thereby denied Swanson due process. *Heth*, 230 Mont. at 271, 750 P.2d at 104-05. In contrast, we explained that the police officers' administration of video and audio testing in *Heth* constituted "gathering" evidence, and, therefore, because the police officers did not have a duty to "gather" exculpatory evidence on Heth's behalf, they did not violate Heth's right to due process by failing to turn on the volume. *Heth*, 230 Mont. at 272, 750 P.2d at 105. Just as in *Heth*, the police officers at the Jefferson County Sheriff's Department did not have a duty to gather exculpatory evidence for Belgarde. *See Heth*, 230 Mont. at 271, 750 P.2d at 104-05. Therefore, their failure to activate the video camera in the booking area to record Belgarde during his booking process did not violate Belgarde's due process rights.

¶20 Furthermore, Belgarde's due process rights were not violated when the police officers at the Jefferson County Sheriff's Department erased a videotaped recording of Belgarde in the sally port. In this regard, Belgarde's reliance on *Halter* to support his argument that the State violated his due process rights by failing to preserve exculpatory evidence is misplaced. In *Halter*, the District Court dismissed with prejudice charges against Halter of felony theft and illegal branding of a red Limousine bull due to the State's failure to preserve exculpatory evidence when the subject bull had been sold and slaughtered before Halter's expert witness could inspect its brands. *Halter*, 238 Mont. at 411-12, 777 P.2d at 1315. In an affidavit filed with Halter's motion to dismiss, Halter's expert witness stated that if he had inspected a skin sample from the subject bull prior to its destruction, he could have aged the brand and determined if the brand in question was placed on the bull during time periods when Halter was not in possession of the bull. *Halter*, 238 Mont. at 410-11, 777 P.2d at 1315.

¶21 On appeal, we explained:

"Whatever the duty the Constitution imposes on the States to preserve

evidence, that duty must be limited to [evidence] that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, [*see United States v. Agurs* (1976), 427 U.S. 97, 109-10, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

*Halter*, 238 Mont. at 412, 777 P.2d at 1316 (quoting *California v. Trombetta* (1984), 467 U.S. 479, 488-89, 104 S.Ct. 2528, 2534, 81 L.Ed.2d 413, 422).

**¶22 We affirmed the District Court's grant of Halter's motion to dismiss, concluding that the evidence destroyed had exculpatory value which was apparent prior to destruction of the evidence; that Halter could not obtain comparable evidence by other reasonably available means; and that an expectation existed that the lost evidence would play a significant role in Halter's defense. *Halter*, 238 Mont. at 413, 777 P.2d at 1316. Additionally, we concluded that the slaughter of the bull was not the intentional or deliberate purpose of the State but that the State was negligent in preserving evidence. Furthermore, given that the bull was not on Halter's land for long periods of time and that the bull was finally discovered in another person's cow herd, we also determined that "the preservation of the bull was as critical to the State's case to obtain a conviction as it was to the defendant to obtain an acquittal[,]" and, therefore, we distinguished the case from other cases such as *Heth*. *Halter*, 238 Mont. at 413, 777 P.2d at 1316.**

**¶23 Unlike in *Halter*, Belgarde has failed to show that the sally port videotape erased by the Jefferson County Sheriff's Department was exculpatory. As the State explained during the hearing on this motion, the videotape would only have shown Belgarde exit Officer Tuttle's patrol car and walk to the booking area without incident. Furthermore, Belgarde could obtain comparable evidence by other reasonably available means. That is, Officer Tuttle was available as a witness to testify concerning Belgarde's actions and demeanor in the sally port. Finally, Belgarde has failed to show that this videotaped evidence of his actions and demeanor in the sally port would play a significant role in his defense. Therefore, although the State was negligent in failing to preserve the videotaped evidence of Belgarde in the sally port, we conclude that Belgarde's due process rights were not violated. Accordingly, we affirm the District Court's denial of Belgarde's motion to**

**dismiss.**

> **¶24** 2. Did the District Court err by denying Belgarde's motion to suppress statements he made at the time of his arrest and prior to being given his *Miranda* warnings?

**¶25 The statements at issue in Belgarde's motion to suppress were referenced by Officer Tuttle in his Arrest Report. After explaining that Belgarde failed the HGN test, Officer Tuttle wrote:**

> I TOLD HIM THAT I THOUGHT HE WAS TO [sic] INTOXICATED TO BE SAFELY OPERATING A MOTOR VEHICLE. I PLACED HIM UNDER ARREST FOR DRIVING OR BEING IN ACTUAL PHYSICAL CONTROL OF A MOTOR VEHICLE WHILE UNDER THE INFLUENCE OF ALCOHOL. HE ADMITTED TO ME THAT HE WAS "TO [sic] DRUNK." HE SAID HE WAS TRYING TO GET TO HIS DADS [sic] HOUSE IN JEFFERSON CITY. HE SAID, "I DIDN'T THINK I COULD MAKE IT TO WHITEHALL." I ASSUMED HE WAS REFERRING TO HIS INTOXICATED STATE OF MIND. I TRANSPORTED MR. BELGARDE TO THE JEFFERSON COUNTY SHERIFF'S OFFICE FOR D.U.I. PROCESSING. THE ENTIRE WAY TO THE SHERIFF'S OFFICE MR. BELGARDE ADMITTED THAT HE WAS TOO DRUNK TO DRIVE, BUT HE WANTED ME TO CUT HIM SOME SLACK. I TOLD HIM SEVERAL TIMES THAT I COULD NOT.

**¶26 After briefing and hearing arguments concerning these statements, the District Court denied Belgarde's motion to suppress. "We review a district court's denial of a motion to suppress to determine whether the court's findings of fact are clearly erroneous and whether those findings were correctly applied as a matter of law."** *State v. Steinmetz,* **1998 MT 114, ¶10, 55 St.Rep. 450, ¶10, ___ P.2d ___, ¶10 (citing** *State v. Widenhofer* **(Mont. 1997), 950 P.2d 1383, 1386, 54 St.Rep. 1438, 1440). The United States Supreme Court has ruled that, unless the proper** *Miranda* **warnings have been given, the states may not use confessions or admissions resulting from a "custodial interrogation" which the Court defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."** *Miranda v. Arizona* **(1966), 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706.**

¶27 Relying on *Miranda* and *Rhode Island v. Innis* (1980), 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297, Belgarde argues that the District Court erred by denying his motion to suppress his statements to Officer Tuttle that he was "too drunk to drive" which were made after his arrest but before he was read his *Miranda* rights. The State responds that no "custodial interrogation" occurred, and, therefore, the District Court properly denied Belgarde's motion to suppress.

¶28 Here, as the State concedes, Belgarde was in custody at the time he made the statements at issue--Officer Tuttle had arrested him for DUI and was transporting him to the Jefferson County Sheriff's Department. However, no evidence suggests that Belgarde's statements were made in response to questions asked by Officer Tuttle. Rather, Belgarde simply volunteered the information that he was too drunk to drive in an attempt to request that Officer Tuttle "cut him some slack." Consequently, we conclude that although Belgarde was in custody, no "custodial interrogation" occurred, and, therefore, his right against self-incrimination under the Fifth Amendment to the United States Constitution was not violated.

¶29 Furthermore, Belgarde relies on *Innis* to argue that his statements should be suppressed because Officer Tuttle engaged in the "functional equivalent" of express questioning. This argument is raised for the first time on appeal. "It is axiomatic that a party may not change the theory on appeal from that advanced in the district court." *State v. Smith* (1996), 276 Mont. 434, 442, 916 P.2d 773, 778 (quoting *State v. Henderson* (1994), 265 Mont. 454, 458, 877 P.2d 1013, 1016). Therefore, we decline to address this argument. Accordingly, we affirm the District Court's denial of Belgarde's motion to suppress.

¶30 3. Is Belgarde entitled to a new trial due to the State's alleged failure to disclose a document contained in the court record?

¶31 On appeal, Belgarde argues that he is entitled to a new trial based on "newly discovered evidence" and that prior to this new trial, the District Court should hold a hearing to determine an appropriate sanction under § 46-15-329, MCA, for the State's alleged discovery violation. Belgarde asserts that the State failed to disclose Officer Tuttle's affidavit of probable cause and his arrest report attached as an exhibit thereto, both signed by Officer Tuttle on May 29, 1995, and contained within the Justice and District Court record. Belgarde contends that these documents contain "critical evidence" on the issue of whether sobriety tests were administered

**to him.**

**¶32 We agree with the State that Belgarde is not entitled to a new trial. In** *State v. Gollehon* **(1995), 274 Mont. 116, 906 P.2d 697, we explained that under § 46-16-702 (2), MCA, a motion for new trial must be filed within 30 days following a verdict or finding of guilty and that no statutory extensions of time are provided.** *Gollehon***, 274 Mont. at 118, 906 P.2d at 699. Here, Belgarde's guilty verdict was entered on January 31, 1996. On May 14, 1996, 104 days after entry of the jury verdict, Belgarde filed a motion with this Court to stay appeal and remand to the District Court for further proceedings; however, he failed to file a motion for a new trial with the District Court itself. We subsequently denied his motion on June 11, 1996.**

**¶32 Notwithstanding that his case was on appeal, Belgarde could have timely filed a motion for a new trial in the District Court, the predicate for his relief, in addition to filing a motion to stay appellate proceedings with this Court. However, Belgarde only filed a motion to stay his appeal and to remand to the District Court for further proceedings--104 days after the jury verdict was entered. This clearly was untimely as well as procedurally incorrect. Furthermore, neither judicially created exception to the 30-day filing requirement enunciated in** *State v. Barrack* **(1994), 267 Mont. 154, 882 P.2d 1028, and** *State v. Perry* **(1988), 232 Mont. 455, 758 P.2d 268, applies in this case. Moreover, the "critical evidence" which Belgarde asserts he just now discovered has been filed in the Justice Court and District Court record throughout the proceedings. Therefore, this is not a situation where the State suppressed evidence or failed to disclose evidence. Rather, Belgarde simply failed to look through the public record.**

**¶33 We hold that Belgarde's motion for a new trial is time-barred. Furthermore, because the State has not made any discovery violations, Belgarde's request that we remand this case to the District Court for a hearing to determine appropriate sanctions under § 46-15-329, MCA, is also denied.**

**¶34 Affirmed.**

/S/ JAMES C. NELSON

No

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER

/S/ W. WILLIAM LEAPHART