# FILED

March 31 2009

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0279

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2009 MT 101

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CLOISE CALUB HERMAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Petroleum, Cause No. DC 05-04
Honorable E. Wayne Phillips, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Meghan Lulf Sutton, Attorney at Law, Great Falls, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; J. Stuart Segrest, Assistant
Attorney General, Helena, Montana

          Monte Boettger, Petroleum County Attorney, Lewistown, Montana

Submitted on Briefs:  July 30, 2008

Decided:  March 31, 2009

Filed:

_____
Clerk

Justice John Warner delivered the Opinion of the Court.

¶1     Cloise Calub Herman (Herman) appeals from a judgment of conviction for aggravated assault in the Tenth Judicial District Court, Petroleum County. We restate and address the issues necessary to decide this appeal as follows:

¶2     Issue 1: Did the District Court err in denying Herman's motion to dismiss for violation of his speedy trial right?

¶3     Issue 2: Did the District Court err in denying Herman's motion to excuse a potential juror for cause?

¶4     Issue 3: Did the District Court err in denying Herman's motion to dismiss for loss of exculpatory evidence?

¶5     As we remand for a new trial, we discuss an additional issue that may arise again.

¶6     Issue 4: Did the District Court err in admitting into evidence a written statement and allowing the statement to go with the jury during deliberations?

## FACTUAL AND PROCEDURAL BACKGROUND

¶7     On July 13, 2005, Herman and his father got into an argument with Kelly Brurud at the Winnett Bar. After being asked to take the argument outside, Herman and his father got in their car and drove away slow enough that Brurud was able to walk alongside and continue the argument. Brurud testified that after the Hermans drove their car about a block with him walking alongside, it stopped, Herman stepped out, stabbed Brurud, got back in car, and then Herman and his father sped off. Brurud told some bystanders someone stabbed him and to call 9-1-1. Herman and his father were later stopped and arrested.

2

¶8 On the night of the incident, the then Petroleum County Sheriff videotaped a statement by Herman's father. His father also wrote a half page statement. After being charged, Herman made a timely discovery request for all "relevant written or recorded statements."

¶9 A jury trial was scheduled for March 13, 2006. Three days before trial, the State moved for a continuance because it had not received some forensic evidence from the State crime laboratory. Herman concurred with the motion and the court rescheduled trial for June 12, 2006.

¶10 On the day of the trial, the State could not produce the videotape of the father's statement. Herman moved to dismiss the charges based on a violation of the prosecution's discovery obligation. The District Court vacated the trial so it could consider the motion to dismiss and ordered the State to locate the tape. After an evidentiary hearing in August, 2006, the District Court concluded that even though the sheriff's department lost the videotape, the State established Herman was not prejudiced because his father was available to testify.

¶11 By order of October 18, 2006, the District Court rescheduled the trial for December 21, 2006. On October 26, 2006, Herman filed a motion to dismiss for violation of his right to a speedy trial.

¶12 The State filed Herman's charges July 26, 2005, and the trial commenced January 22, 2007, some 545 days later. The District Court held a hearing on Herman's motion to dismiss for lack of a speedy trial and ultimately denied the motion.

¶13    At the trial, a Petroleum County commissioner was a prospective juror.  Herman's counsel challenged him for cause because the commissioner said he had spoken with the previous prosecutor about this case multiple times and had formed an opinion concerning Herman's guilt.  He also said he could be impartial.  The District Court denied the challenge.

¶14    In an attempt to impeach Herman's father, the State sought to introduce into evidence his father's written statement.  Over Herman's objection, the District Court admitted the statement for impeachment purposes.  The District Court also allowed the statement into the jury room during deliberations, again, over Herman's objection.

¶15    The jury found Herman guilty of aggravated assault.  The District Court sentenced him and he now appeals.

## STANDARDS OF REVIEW

¶16    We review de novo a district court's determination of whether a speedy trial violation occurred because it is a conclusion of constitutional law.  *State v. Ariegwe*, 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815.

¶17    We review a district court's denial of a challenge for cause to a prospective juror for abuse of discretion.  *State v. Robinson*, 2008 MT 34, ¶ 7, 341 Mont. 300, 177 P.3d 488.  A district court abuses its discretion when it fails to excuse a prospective juror whose bias is discovered during voir dire.  *State v. Heath*, 2004 MT 58, ¶ 7, 320 Mont. 211, 89 P.3d 947.  If a district court abuses its discretion in denying a challenge for cause, the defendant uses a peremptory challenge to remove the juror and uses all of his peremptory challenges, we will reverse the judgment and order a new trial.  *Robinson*, ¶ 7.

4

¶18 Denial of a motion to dismiss a criminal case is a question of law which this Court reviews de novo. *State v. Belgarde*, 1998 MT 152, ¶ 13, 289 Mont. 287, 962 P.2d 571.

¶19 As a general rule, we review a trial court's evidentiary rulings for abuse of discretion. *State v. McOmber,* 2007 MT 340, ¶ 10, 340 Mont. 262, 173 P.3d 690.

**DISCUSSION**

¶20 *Issue 1: Did the District Court err in denying Herman's motion to dismiss for lack of a speedy trial?*

¶21 *Ariegwe*, decided August 16, 2007, sets forth in some detail how a district court is to analyze a motion to dismiss based on lack of a speedy trial. In this case, the District Court heard Herman's motion to dismiss for lack of a speedy trial and entered its order denying the motion before *Ariegwe*. In deciding the motion, the District Court utilized the now superseded analysis set forth in *State v. Haser*, 2001 MT 6, ¶ 21, 304 Mont. 63, 20 P.3d 100. In most other cases on appeal where a district court made a speedy trial decision before *Ariegwe*, we have remanded the case for the district court's reconsideration consistent with *Ariegwe*. *See State v. Smith*, 2008 MT 7, ¶ 24, 341 Mont. 82, 176 P.3d 258; *State v. Madplume*, 2008 MT 37, ¶ 10, 341 Mont. 321, 176 P.3d 1071; *State v. Howard*, 2008 MT 173, ¶ 25, 343 Mont. 378, 184 P.3d 344.

¶22 Not only does *Ariegwe* contain updated guidelines for district courts to use in deciding motions to dismiss based on lack of a speedy trial, the recent decisions of *State v. Rose*, 2009 MT 4, ¶¶ 41-92, 348 Mont. 291, ___ P.3d ___, and *State v. Billman*, 2008 MT 326, 346 Mont. 118, 194 P.3d 58, provide some further guidance in deciding these motions. We

conclude the appropriate method to resolve Herman's motion to dismiss for violation of his right to a speedy trial is to remand to the District Court for analysis under *Ariegwe*.

¶23    *Issue 2: Did the District Court err in denying defendant's motion to excuse a prospective juror for cause?*

¶24    Herman asserts the District Court erred when it denied his motion to excuse a juror for cause because the juror came to the courthouse with a preformed opinion of his guilt.  The colloquy upon which Herman bases his argument follows:

PROSECUTOR:    [H]ave any of you any direct knowledge about this case? . . . If so, raise your hand.

VENIREMAN:    I am a County Commissioner here and this -- this case has been discussed between us and the former prosecutor, Bill Berger, several times in our office . . . so basically I am pretty familiar with a lot of the things that he has told us --

.    .    .

PROSECUTOR:    . . . Knowing what you have been told or what you have heard do you believe that you could be fair and impartial, in other words, make your decision solely based on what the information that comes from that witness chair or that the [c]ourt allows into evidence and then the court's instructions on how you apply that information?

VENIREMAN:    Yes, I probably --

PROSECUTOR:    You probably what?

VENIREMAN:    Yes, I think I could . . . before I came here I thought I knew which way I was leaning before I knew I was a juror.

.    .    .

PROSECUTOR:    We all hear things and we all make judgments without knowing much of anything sometimes; right? . . . [W]hat

6

we do ask and what you--you have to struggle with and articulate for us is whether you can put aside any of those preconceived notions or things that you have heard and not consider them whatsoever and listen only to what you receive in the trial today. You think you can do that[]?

VENIREMAN:      Yes.

However, when defense counsel questioned the potential juror, the following exchange occurred:

DEFENSE:        You told [the prosecutor] when he was questioning you that you had some conversations with [County Attorney] Bill Berger; correct?

VENIREMAN:      Yes.

DEFENSE:        How many conversations would you say that you had with Mr. Berger about this case without getting into the crux of what you talked about?

VENIREMAN:      . . . five or six times at least.

.     .     .

DEFENSE:        And you did say that before you came in here today you knew which way you were leaning, correct?

VENIREMAN:      Yes.

DEFENSE:        I am not going to ask you which way you were leaning but if you were to go back and deliberate right now without having heard any of the evidence just based on what you have heard on the street, what you have heard from Mr. Berger, the County Attorney, would you have a leaning one way or the other?

VENIREMAN:      I am afraid I would.

DEFENSE:        Your Honor, at this time I would ask to excuse Juror No. 3

7

for cause.

THE COURT: Any questions, [prosecutor]?

PROSECUTOR: Yes. . . . I think we kind of covered this. The follow-up question to that is you understand that you cannot consider anything that you have heard outside this Courtroom and I believe you answered that you would listen to the witnesses and make your decision based solely on that. Did you say that? Do you believe you could do that?

VENIREMAN: Yes, I believe . . .

THE COURT: Probably? Yes or no?

VENIREMAN: (Inaudible.)

THE COURT: Probably? Yes or no?

VENIREMAN: Yes.

PROSECUTOR: And--and you could put aside things that you have heard as being just that--discussions, rumor, whatever it might have been and base your decision solely on what is presented in the next couple days?

VENIREMAN: Yes.

PROSECUTOR: I am going to object, Your Honor.

THE COURT: To put it into different words, could you be fair and impartial without reference to anything you have heard in the past?

VENIREMAN: Yes, I could.

THE COURT: All right. Objection is denied.

Herman subsequently used a preemptory challenge to remove the juror and exhausted all of his other preemptory challenges.

8

¶25    A potential juror is to be excused for cause when that person has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. When voir dire examination of a potential juror raises serious doubts about the juror's ability to be fair and impartial, the juror should be removed for cause. *Robinson*, ¶ 8; *State v. Hausauer*, 2006 MT 336, ¶ 23, 335 Mont. 137, 149 P.3d 895; *State v. Golie*, 2006 MT 91, ¶ 8, 332 Mont. 69, 134 P.3d 95; *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, 89 P.3d 958; *Heath*, ¶ 10; *State v. Freshment*, 2002 MT 61, ¶ 11, 309 Mont. 154, 43 P.3d 968. We review a potential juror's voir dire responses as a whole to determine whether a serious question arose regarding the juror's ability to be fair and impartial. *State v. Harville*, 2006 MT 292, ¶ 9, 334 Mont. 380, 147 P.3d 222; *Golie*, ¶¶ 11-29, *Heath*, ¶¶ 17-41.

¶26    The potential juror in question here discussed this case with the former Petroleum County Attorney at least five or six times. Before he came into court, he formed an opinion about the case. A potential juror who has formed a fixed opinion on the merits of a case before being empanelled is not impartial, and generally should not be seated even though he says he will try and set his opinion aside. Some time ago, Chief Justice Wade explained why such a potential juror should be excused:

> And the law also guards the party against the preconceived opinions of the juror, for though he may declare that he has formed an opinion in the case, from hearing the facts and circumstances stated by a party or a witness, but that he can put away this opinion and try the cause upon the testimony as it is produced in court; yet if he believes the facts upon which his opinion is founded, he has no business in the jury box. Men may put away their opinions, if such a thing were possible, but opinions once formed, even though erroneous, cling to us and exert an influence when we do not know it, and it

9

requires much more testimony to eradicate and re-form them correctly than would be necessary if the subject were entirely new. That is to say, a juror, with an opinion already formed in a case, would not be likely to arrive at the same results, upon the same testimony, as if he had no opinion when the testimony was presented. It must require some testimony to remove the opinion already formed, and the amount necessary for this purpose will depend upon the nature of the belief upon which the opinion is founded. And to permit a juror to remain in the box with an opinion already formed as to the merits of the case, would require a party to overcome not only the testimony of his opponent, but he must also destroy the preconceived judgment of the man who is to render a decision in the cause, and such a task, in the majority of cases, would be entirely hopeless.

*Ruff v. Rader*, 2 Mont. 211, 213-14 (1874).

¶27 In this instance, the potential juror did not merely raise concerns about Herman's innocence; he harbored an opinion based on information imparted to him in five or six conferences with the prosecutor about the specific case being tried. We cannot expect this bias to be removed by a simple "Yes" to a leading question from the District Judge, asking if he could be impartial in spite of his preformed opinion.

¶28 We recognize it will often be difficult in small, rural communities to find 12 jurors who know little or nothing about a particular case. While some knowledge about what may have happened does not automatically disqualify a potential juror, in this case, the county commissioner's knowledge of Herman's case crossed the line. Serious doubt is raised about the potential juror's ability to be fair and impartial. We conclude the record shows the county commissioner possessed a state of mind preventing him from acting with entire impartiality and without prejudice to the substantial rights of the defendant Herman. Section 46-16-115(2)(j), MCA. The District Court abused its discretion in denying Herman's challenge for cause, Herman used one of his preemptory challenges to remove the juror, and

10

Herman exhausted all of his preemptory challenges. The judgment must be reversed and this case remanded for a new trial.

¶29    *Issue 3: Did the District Court err in denying Herman's motion to dismiss for loss of exculpatory evidence?*

¶30    Herman asserts the District Court erred when it denied his motion to dismiss for a loss of exculpatory evidence--a videotape of the sheriff's interview with Herman's father the night Brurud was stabbed.

¶31    If the State deliberately or intentionally suppresses or destroys evidence, a per se violation of due process occurs. *Belgarde*, ¶ 16. No evidence in the record shows the State or its agents deliberately destroyed the video tape. If the State lost evidence due to negligence or lack of due diligence, the defense must show the evidence was material, of substantial use, and exculpatory in order to have the case dismissed. In other words, the defendant must show the lost evidence "'[w]ould have tended to clear the accused of guilt, to vitiate a conviction.'" *Belgarde*, ¶ 16 (quoting *State v. Patterson*, 203 Mont. 509, 512-13, 662 P.2d 291, 293 (1983) (citing *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963))). In addition, the defendant must show he could not obtain comparable evidence by other reasonable means and the exculpatory value was apparent before the evidence was lost. *State v. Halter*, 238 Mont. 408, 412, 777 P.2d 1313, 1316 (1989).

¶32    Herman claims the lost videotape would play a significant role in his defense because even though his father testified at the trial, the tape would allow him to bolster his father's credibility. However, the jury could judge his father's credibility when he testified, thus how

11

the statement plays a significant role is unclear. Herman's father could, and did, testify to the same exculpatory matters allegedly on the lost videotape, thus comparable evidence was clearly available by having him testify. We conclude Herman's due process rights were not violated when the State lost the videotape and the District Court did not err in denying his motion to dismiss.

¶33 *Issue 4: Did the District Court err in admitting into evidence a written statement of Herman's father, and in allowing the statement to go into the jury room during deliberations?*

¶34 As this case is remanded for a new trial, we discuss Herman's arguments he was prejudiced by the District Court's admission of his father's written statement into evidence, and that the District Court erred in allowing the statement to go into the jury room during deliberations.

¶35 A trial court has broad discretion in determining the relevance and admissibility of evidence. In exercising its discretion, however, the trial court is bound by the rules of evidence or applicable statutes. Thus, to the extent the court's ruling is based on an interpretation of an evidentiary rule or statute, our review is de novo. *State v. Derbyshire*, 2009 MT 27, ¶ 19, 349 Mont. 114, 201 P.3d 811.

¶36 First, Herman asserts the District Court abused its discretion when it admitted his father's written statement into evidence for impeachment purposes. Herman claims the statement did not impeach his father because a minor discrepancy between it and his father's testimony is not an inconsistency.

12

¶37     In his testimony at trial, Herman's father said he chatted with the bartender for a minute or two before going outside. In his written statement, he said he followed Herman outside. Thus, there is inconsistency between his testimony and his statement, even though it is minor. The District Court's admission of the statement into evidence was in accordance with M. R. Evid. 801(d)(1), which provides a prior oral or written statement inconsistent with the testimony of a trial witness is admissible.

¶38     Herman also argues the District Court erred when it allowed the jury to take the written statement into the jury room during deliberations. Jurors may take with them into the jury room exhibits received as evidence, which in the opinion of the court will be necessary. Section 46-16-504, MCA. However, this Court has recognized the common law rule prohibiting courts from "submitting testimonial materials to the jury for unsupervised and unrestricted review during deliberations." *State v. Harris*, 247 Mont. 405, 417, 808 P.2d 453, 460 (1991); *State v. Bales*, 1999 MT 334, ¶ 24, 297 Mont. 402, 994 P.2d 17 (noting that the Legislature did not intend § 46-16-504, MCA, to abrogate the common law rule against the submission of testimonial materials to the jury). Testimonial evidence is a record of evidence elicited from a witness. *Bales*, ¶ 16 (quoting Black's Law Dictionary 580 (7th ed. 1999)).

¶39     In this case, the statement is akin to a record of the evidence elicited from a witness because it is nearly identical to the father's testimony. Under these circumstances, the statement constitutes testimonial evidence. Sending the statement into the jury room during deliberations could easily place undue emphasis on the testimony of a particular witness.

13

We conclude the statement should not be allowed into the jury room during deliberations when this case is retried.

## CONCLUSION

¶40     Upon remand, the District Court shall first reconsider Herman's motion to dismiss for lack of a speedy trial utilizing the analysis in *Ariegwe*. If the motion is denied, Herman shall have a new trial.

/S/ JOHN WARNER


We Concur:


/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE