

DA 09-0679

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 169

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

JOHNNY D. SEIFFERT,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and For the County of Carbon, Cause No. DC 09-08
Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Robert L. Stephens, Jr., Southside Law Center; Billings, Montana

      For Appellee:

      Steve Bullock, Montana Attorney General; Micheal S. Wellenstein, Assistant Attorney General; Helena, Montana

      Alex Nixon, Carbon County Attorney; Patrick N. Dringman, Special Deputy County Attorney; Big Timber, Montana

Submitted on Briefs:  June 29, 2010

Decided:   August 4, 2010

Filed:

_____
Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Appellant Johnny D. Seiffert (Seiffert) appeals from the sentence imposed by the Twenty-Second Judicial District Court, Carbon County, for his conviction of driving under the influence of alcohol (DUI), in violation of § 61-8-401, MCA.

¶2 We consider the following issue on appeal:

¶3 ***Whether the District Court erred by denying Seiffert's motion to dismiss for negligent or deliberate suppression of evidence?***

### FACTUAL AND PROCEDURAL BACKGROUND

¶4 This case arises out of Seiffert's arrest and conviction for DUI in violation of § 61-8-401, MCA. On the evening of April 12, 2008, Seiffert was involved in a one-vehicle accident on Highway 78 near Red Lodge, Montana. Highway Patrolman Eric Gilbert (Gilbert) responded to the crash and reported that during his investigation, he detected a strong odor of intoxicating substance on Seiffert's breath, Seiffert's eyes were bloodshot and glassy and that his speech was slurred. Gilbert also reported that Seiffert had poor balance and was unsteady on his feet. After his arrest, Seiffert refused to take a breath test.

¶5 Subsequently, on April 24, 2008, at the prosecutor's request, the investigating officer conducted a follow up investigation and located a closed circuit television (CCTV) recording at the Silver Strike Casino in Red Lodge, Montana. During the officer's investigation, the owner of the Silver Strike Casino informed him that the CCTV recordings are erased after four to six weeks. According to testimony in the record, the

2

CCTV recording, which was actually a series of still photographs taken every several seconds, showed Seiffert at the Silver Strike Casino gambling and walking within the casino over the course of an hour immediately preceding the accident. Upon seeing the CCTV recording, the officer requested a "still" image of Seiffert at the casino. Ultimately, the CCTV recording was erased. Testimony by the investigating officer and the Silver Strike Casino owner, however, indicates that there was no evidence on the CCTV recording that Seiffert was intoxicated.

¶6 A week later, on May 2, 2008, prior to his arraignment in Carbon County Justice Court, Seiffert's attorney filed a motion and demand for discovery which included a request for any audio or video recording within the "control" of the State. On May 30, 2008, the prosecution responded that the State had "produced all of the information in its possession that relates to this case, and . . . will immediately provide the defendant with copies of whatever investigative information may be subsequently generated."

¶7 Over three months later, on July 27, 2008, the investigating officer filed a supplemental narrative report which disclosed the existence of the CCTV recording. This report was forwarded to Seiffert's defense counsel on August 1, 2008. Days later, Seiffert contacted the Silver Strike Casino owner himself and requested a copy of the CCTV recording. Seiffert was informed, however, that the CCTV recording had been erased and that it was no longer available.

¶8 On September 4, 2008, in response to the investigating officer's supplemental narrative and the fact that the Silver Strike Casino had erased the CCTV recording,

3

Seiffert filed a motion to dismiss arguing that the loss of the CCTV recording was a *Brady* violation because the CCTV recording was exculpatory evidence material to the issue of his guilt or innocence. After an evidentiary hearing, the Justice Court denied Seiffert's motion to dismiss. Seiffert then entered a nolo plea reserving his right to appeal the denial of his motion to dismiss for a *Brady* violation. On January 16, 2009, the Justice Court entered its judgment and order. Seiffert immediately filed his notice of appeal to the District Court.

¶9 On May 29, 2009, Seiffert filed his motion to dismiss in the District Court detailing the *Brady* violation and the asserted negligent or deliberate suppression of exculpatory evidence. After an evidentiary hearing, the District Court denied Seiffert's motion to dismiss reasoning that "[e]ven if the disputed evidence was exculpatory, and even if the disputed evidence would have changed the outcome of the trial, the Defendant has failed to show that the State suppressed evidence or that the evidence was material for the purposes of suppression analysis." Seiffert appeals.

## STANDARD OF REVIEW

¶10 This Court reviews the denial of a motion to dismiss in criminal cases de novo to determine whether the district court's conclusions of law are correct. *State v. Samples*, 2008 MT 416, ¶ 13, 347 Mont. 292, 198 P.3d 803.

## DISCUSSION

¶11 *Whether the District Court erred by denying Seiffert's motion to dismiss for negligent or deliberate suppression of evidence?*

4

¶12 On appeal, Seiffert argues that since the State knew the CCTV recording would be erased, the State's failure to timely inform him of its existence was a *Brady* violation. Without specifically going through each prong of the *Brady* test, Seiffert lays out what he terms "fundamental principles" of a *Brady* violation and asserts that in light of the ubiquitous use of CCTV surveillance today, an extension of these principles is warranted in order to protect the due process rights of criminal defendants.

¶13 The State counters that the District Court properly denied Seiffert's motion to dismiss because, pursuant to our *Brady* jurisprudence, the State did not possess or suppress the CCTV recording, Seiffert could have obtained the recording with reasonable diligence, and disclosure of the CCTV recording would not have changed the outcome of the case.

¶14 It is well established that the State's suppression of material evidence favorable to a defendant violates the defendant's constitutional right to due process. *See State v. Johnson*, 2005 MT 318, ¶ 12, 329 Mont. 497, 125 P.3d 1096 (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed. 2d 215 (1963)). In order to demonstrate a *Brady* violation the criminal defendant bears the burden of establishing that (1) the State possessed evidence favorable to the defense; (2) the defendant did not possess the evidence nor could he have obtained it with reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed, a reasonable probability exists that the outcome of the proceeding would have been different. *Johnson*, ¶ 12. Here, even assuming that the CCTV recording was favorable to

Seiffert and that the State's knowledge that it would be destroyed amounts to "constructive possession" as Seiffert asserts, under the second, third, and fourth prong of the *Brady* test Seiffert cannot prevail.

¶15 First, if CCTV surveillance is as ubiquitous as Seiffert asserts, there is no reason why he could not have, through the exercise of reasonable diligence, gone to the Silver Strike Casino and requested to view the CCTV recording himself. Indeed, the owner of the Silver Strike Casino testified that had Seiffert timely requested to view the CCTV recording he would have been allowed to do so. As we have long held, the State is not required to take the initiative or even assist the defendant in obtaining evidence on his behalf. *State v. Belgarde*, 1998 MT 152, ¶ 16, 289 Mont. 287, 962 P.2d 571. While Seiffert maintains he was unaware that the CCTV recording existed, such an argument is not persuasive in light of his simultaneous assertion that CCTV surveillance is "ubiquitous" and "well documented." In short, Seiffert could have "obtained [the CCTV recording] with reasonable diligence." *Johnson*, ¶ 12.

¶16 Second, Seiffert has failed to establish that the State suppressed the CCTV recording or that had it been disclosed, a reasonable probability exists that the outcome of the proceeding would have been different. We have explained that if the State deliberately or intentionally suppresses exculpatory evidence, a per se violation of due process occurs. *Belgarde*, ¶ 16. Here, there is no evidence in the record that indicates the State deliberately suppressed the CCTV recording. Rather, the record indicates that at most, any alleged suppression of the recording was due to negligence on the part of the

6

State. If the State's loss of exculpatory evidence is due to negligence, a criminal defendant must show that the evidence was material, of substantial use, and exculpatory in order to have the case dismissed. *State v. Herman*, 2009 MT 101, ¶ 31, 350 Mont. 109, 204 P.3d 1254. The criminal defendant must also show that comparable evidence could not be obtained by other reasonable means and that the exculpatory value was apparent before the evidence was lost. *Herman*, ¶ 31. Seiffert has not met this burden.

¶17 Here, comparable evidence was obtained and in fact presented to the District Court. The investigating officer who viewed the tape and the owner of the Silver Strike Casino both testified that Seiffert did not appear intoxicated on the CCTV recording. Unlike a situation where comparable testimonial evidence contradicts what a CCTV recording shows, the comparable evidence here supports Seiffert's position that he did not appear intoxicated. As we explained in both *Herman* and *Belgarde*, in the context of a *Brady* violation, testimony as to what was on a video recording is evidence that is "comparable" to the actual video recording itself. *Herman*, ¶ 32; *Belgarde*, ¶ 23. Thus, not only was comparable evidence obtained but there is no indication that disclosure of the CCTV recording would have changed the outcome of the case because the District Court knew that the CCTV recording did not show an obviously intoxicated Seiffert. We conclude that Seiffert has failed to demonstrate a *Brady* violation and the District Court's denial of his motion to dismiss was not error.

¶18 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:


/S/ BRIAN MORRIS
/S/ MICHAEL E WHEAT
/S/ PATRICIA COTTER
/S/ JIM RICE