No. 88-610

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Appellant,

  -vs-

WINIFRED P. "JERRY" HALTER,

        Defendant and Respondent.

APPEAL FROM: District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable Chan Ettien, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Betsy Brandborg, Asst. Atty. General, Helena
        Thomas J. Sheehy, County Attorney, Fort Benton,
        Montana

    For Respondent:

        Robert D. Morrison; Morrison, Young, Melcher and
        Brown, Havre, Montana

Submitted on Briefs: May 11, 1989

Decided: August 15, 1989

Filed:

_____
              Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

The State of Montana appeals from an order of the District Court, Twelfth Judicial District, Chouteau County, dismissing with prejudice an information charging the defendant, Winfred P. "Jerry" Halter with two felonies upon the grounds that the State had allowed exculpatory evidence to be destroyed to the prejudice of the defendant.

We affirm the District Court.

The information filed March 16, 1988, charged the defendant in two counts, (1) felony theft, committed between September, 1986, and February 23, 1988, and (2) illegal branding, committed between May, 1987, and February 23, 1988. The subject of the branding was a red Limousin bull that on February 22, 1988 was found in the cow herd of Earl Sluggett on his ranch southeast of Big Sandy, Montana. Subsequent investigation revealed that the bull was owned by Ruth Owens and her daughter, Betty Donner, and that the bull had been missing since May 22, 1987. They resided on a ranch on the south side of the Missouri River and in reporting the bull missing, stated that they believed that the bull had crossed the Missouri River to the north side and might be found in the general area where the defendant's ranch is located.

Earl Sluggett informed the inspectors that the bull had been in his herd on a previous occasion and at that time did not have the brand belonging to the defendant. This was probably in May, 1987. Sluggett also stated that on another occasion, the same bull had been on a ranch owned by Larry Jappe, who resides in the same area.

When Sluggett reported the discovery of the bull on his ranch on February 27, 1988, the bull carried two brands. The

brand on the bull's right hip was identified as belonging to Merritt Pride, from whom the bull had been purchased by Ruth Owens' husband, the late Cecil Owens. The brand on the left hip of the bull appeared to be that of the defendant Halter.

Halter was arrested and entered a plea of not guilty to the charges. Thereafter, an omnibus hearing was held in the District Court at which counsel for the defendant moved for and was granted discovery of all of the State's written or recorded statements, names of the State's witnesses, copies of any statements, inspection of all physical and documentary evidence in the State's possession and discovery of all special or additional information coming thereafter into the State's possession. At the same hearing, the State indicated that it would call expert witnesses whose names would be supplied to the defendant, as well as copies of reports of any scientific tests and experiments which the State might conduct.

On July 6, 1988, the defendant moved the court for an order allowing the inspection of the red Limousin bull for the purpose of utilizing an expert of defendant's choice to inspect the brands. The motion indicated that the county attorney had told the defendant's counsel that the bull had been sold. The motion requested that the State take whatever action was necessary to locate the bull and allow the inspection.

On July 25, 1988, the county attorney moved the court to set a trial date. On July 26, 1988, defendant filed a written objection to the motion for trial date stating that the State had not responded to defendant's motion for inspection of the bull and indicating that the county attorney had advised the defendant by letter that the bull "may have been slaughtered." On August 1, 1988, the county attorney filed a reply to the motion for inspection stating

that the bull had been sold at auction on May 20, 1988, and thereafter, the bull had been slaughtered. In the reply, the county attorney advised that the defendant had had an opportunity to examine the animal and that photographs of the bull were taken by the defendant.

The District Court set the cause for trial on September 21, 1988. The defendant moved to vacate the trial setting on the grounds that the bull had been slaughtered, that the animal was unavailable for inspection by the defendant's expert and that the expert's testimony was critical to support the defendant's contemplated motion to dismiss by reason of destruction of exculpatory evidence.

On October 7, 1988, defendant's counsel filed a motion to dismiss the charges against Halter because of the State's failure to preserve exculpatory evidence in the possession and control of the State's agents. Counsel for the defendant also filed an affidavit from Dr. Anthony Stannard, a doctor of veterinary medicine of the University of California, and a Ph.D. in veterinary pathology. His affidavit related that he had, at the request of attorneys for Halter, reviewed nine skin samples obtained from the branded pelts of nine head of cattle taken by a Havre veterinarian, conducted experiments on the same, and determined the ages of the brands, to which he could certify within 60 days. The affidavit stated that evidence from Halter would show that defendant was not in possession of the red Limousin bull from at least November 1, 1987, through February 25, 1988, and from the early spring of 1987 through June, 1987. The affidavit related that if Dr. Stannard could have inspected a skin sample from the red Limousin bull prior to its destruction, he could have determined if the brand in question was placed on the bull during the time periods set forth.

The contentions of the defendant's counsel at the time of the motion to dismiss charges against Halter were that the slaughter of the bull prevented defendant from establishing that it was branded at a time when it was in the possession of others; that inspection would reveal the type of branding iron used which could be compared to those used by the defendant; that the slaughter prevented a direct comparison of defendant's branding irons with the brand on the bull; and that the defendant was denied a comparison of the weight of the bull in question with the weight of the bulls previously owned by defendant.

In objecting to the motion to dismiss, the State contended before the District Court that the motion to dismiss did not meet the necessary legal standards for dismissal, that defendant had let three to four months elapse before demanding inspection of the bull, that an evidentiary hearing was necessary to determine whether the evidence was in fact exculpatory, and that otherwise, without an evidentiary hearing, the defendant's motion should be denied.

On November 28, 1988, the District Court filed its order dismissing the charges against Halter with prejudice. In its findings, the court noted that at the omnibus hearing on May 2, 1988, when the court ordered all physical evidence in the possession of the State to be made available for inspection by defendant, the State also informed the court that it was going to use expert witnesses and scientific tests and experiments and comparisons, which indicated to the court that the State intended to preserve the red Limousin bull. The court agreed that the slaughter of the bull made it impossible for defendant's experts to determine the age of the brand on the bull, and for making comparisons of the defendant's branding irons with the brand that appeared on the bull. The court found defendant was also prevented from

making comparisons of the weight and physical characteristics between the red Limousin bull, and red Saler bulls which defendant also owned. The court found a duty in the State to preserve the primary physical evidence of the case and that the destruction of the bull constituted destruction of exculpatory evidence which was prejudicial to an effective defense. The court further found that an evidentiary hearing was not necessary in that it would not assist the court and that the arguments of the State for an evidentiary hearing merely went to the weight of the evidence. The court stated, "The defendant, having wrongfully been denied an opportunity to inspect the bull, is unable to develop the evidence which counsel for the state indicates he is able to rebut through cross-examination or contradictory testimony."

On appeal, the State points to the case of United States v. Agurs (1976), 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342, in which the United States Supreme Court said that the "mere possibility" that an item of undisclosed information might help the defense or affect the outcome of the trial does not establish "materiality" in the constitutional sense. Thereafter, in California v. Trombetta (1984), 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413, 422, the Supreme Court said:

> Whatever the duty the constitution imposes on the state to preserve evidence, that duty must be limited to those that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, see United States v. Agurs, 427 U.S. at 109, 110, 49 L.Ed. 342, 96 S.Ct. 2392, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

In State v. Ronald Lee Craig (1976), 169 Mont. 150, 545 P.2d 649, this Court held that when the State, due to

- 6 -

negligence, loss, replacement or destruction, is unable to produce certain physical evidence in the prosecution of the case, reversal of a conviction is not necessary where the actual objects were not vital to the defense, were not exculpatory in nature, and the result would not have been affected by their introduction.

The essential issue raised by the State on appeal is that the District Court should have held an evidentiary hearing in order to determine the materiality of the ability of the defendant and his agents to inspect the bull. It is true, however, as the District Court noted, that the evidentiary hearing after the slaughter would have been of little value because the slaughter prevented defendant from establishing, through his experts, the age of the brand, its comparison with defendant's branding irons and the weight and physical characteristics of the red Limousin bull. Dr. Stannard's affidavit establishes that he would have been able to establish, within 60 days, the age of the brand. In other words, as Dr. Stannard noted, if he found the brand were six months old, his certainty was sufficient to fix the brand anywhere from five months of age to seven months of age. In view of the fact that this bull, after its departure from its owner's ranch, was not always on the defendant's lands, but was present twice on Sluggett's lands and once on Larry Jappe's, the age of the brand was critical evidence for the defendant. In addition, destruction of the pelt meant that no comparison could be made by experts between the brand itself and the branding irons owned by the defendant.

It appears from the file therefore that (1) the evidence destroyed had an exculpatory value to the defendant, (2) the exculpatory value of the evidence was apparent before the destruction of the evidence because the State itself indicated it would conduct experiments and use experts

with respect to the brands, (3) comparable evidence is not now within the defendant's ability to obtain by other reasonably available means, and (4) there was an expectation that the lost evidence would play a significant role in the defense of the defendant.

We determine here that the slaughter of the bull was not the intentional or deliberate purpose of the State but rather that the State was negligent in preserving necessary evidence in the cause. In view of the circumstances here, the long periods when the bull was not on Halter's lands, and was in fact finally discovered in Sluggett's cow herd, the preservation of the bull was as critical to the State's case to obtain a conviction as it was to the defendant to obtain an acquittal. This factor distinguishes this case from State v. Craig, supra; State v. Heth (Mont. 1988), 750 P.2d 103, 45 St.Rep. 194; State v. Palmer (1983), 207 Mont. 152, 673 P.2d 1234; and State v. Amaya (Mont. 1987), 739 P.2d 955, 44 St.Rep. 1173, all of which are relied on by the State. In the circumstances here, the District Court was correct in determining that an evidentiary hearing is not necessary because that which could develop from an actual inspection of the bull by experts was never developed because of the slaughter. At that point the State had nothing to rebut in an evidentiary hearing.

We therefore affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

- 8 -

_John Conway Harrison_

_William E Hunter_

_Justices_