FILED

May 31 2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 15-0373

DA 15-0373

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 129

STATE OF MONTANA,

       Plaintiff and Appellant,

  v.

DANIEL JOSEPH COLVIN,

       Defendant and Appellee.

APPEAL FROM:    District Court of the Sixth Judicial District,
In and For the County of Park, Cause No. DC-14-61
Honorable Brenda Gilbert, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Bruce E. Becker, Park County Attorney, Kathleen Carrick, Chief Deputy
County Attorney, Livingston, Montana

      For Appellee:

          Karl Knuchel, Shenandoah R. Roath, Karl Knuchel, P.C.,
Livingston, Montana

Submitted on Briefs:  April 27, 2016

Decided:  May 31, 2016

Filed:

_____
              Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     The State of Montana appeals from the District Court's Decision and Order filed June 2, 2015, granting Daniel Joseph Colvin's motion to dismiss. We affirm.

¶2     We restate the issue on appeal as follows:

*Did the District Court err in dismissing the charge against Colvin based upon his claim that the State failed to preserve exculpatory evidence?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3     On October 9, 2014, the State charged Colvin by information with attempted deliberate homicide in the September 4, 2014 shooting of Michael Aja. At the time of the incident Aja was sitting in his Jeep vehicle. Colvin claimed that he was holding the pistol inside the driver's side window when it accidently fired and hit Aja. On the same day as the shooting, law enforcement officers seized and impounded the Jeep as evidence. As the case developed, the position of the pistol and its distance from the victim when fired became important issues to the prosecution and the defense. The State's theory was that the pistol shot came from several feet outside the vehicle, while Colvin's theory was that it came from very near or inside the window. Colvin also contends that each eyewitness to the incident, including the victim, supports his theory that the shot was fired from near or inside the vehicle window.

¶4     On October 9, the same day that the State filed the charge, Colvin's attorney filed a motion for discovery pursuant to § 46-15-322, MCA. The motion listed numerous objects and categories of requested information, specifically including the vehicle in which Michael Aja was shot and "all material exculpatory or inculpatory of the

2

defendant." The defense believed that the vehicle contained essential evidence such as blood spatter and gunshot residue. On October 14 the District Court entered an order granting the defense discovery motion, requiring disclosure of "all materials known or discovered . . . pertinent to this case." That same day the State filed a motion for leave to return a wallet and keys to Michael Aja.

¶5     On October 30, 2014, the State's expert witness examined the vehicle and collected evidence, including photographs. The expert subsequently concluded, based upon his examination of the vehicle and other evidence, that Colvin was seven feet from the vehicle when he fired the shot. On November 9, 2014, the State returned the vehicle to the victim Michael Aja. The State did not notify the defense or the District Court that it intended to release the vehicle and did not seek leave of the District Court to do so.

¶6     On November 21, 2014, Colvin's attorney, still not knowing that the State released the vehicle, filed a motion to compel, contending that the State had not complied with the Court's October 14 order requiring discovery. The District Court granted the motion to compel, requiring the State to produce "all completed discovery information currently in the State's possession."

¶7     On December 10 the State provided additional items of discovery to Colvin's attorney, including a receipt disclosing that the Jeep vehicle was returned to Michael Aja on November 9, 2014. This was the State's first notice to the defense that the vehicle was no longer in State custody. The State never informed Colvin or his attorney of its intent to return the vehicle, and the State never sought or obtained leave from the District

Court to do so. After the State returned the vehicle, Michael Aja used it for his daily travel needs. The State provided its expert's report to the defense on February 10, 2015.

¶8 On February 26, 2015, Colvin moved to dismiss the charge based upon the State's failure to preserve the vehicle. On June 2, 2015, after briefing by the parties, the District Court entered its Decision and Order Regarding Defendant's Motion to Dismiss. The District Court granted Colvin's motion and dismissed the charge against him based upon the State's failure to preserve the vehicle. The District Court relied upon the constitutional due process right of criminal defendants to obtain exculpatory evidence held by the prosecution. *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963). The District Court determined that the "release of the vehicle amounted to the loss of the crime scene itself, or at least the most significant component of the crime scene." The District Court noted that there was "a significant dispute in the position of the State and the defense as to where the defendant was standing when the gun discharged." The District Court determined that after release of the vehicle and Aja's daily use, the defense had no means to obtain evidence as it existed at the time the State's expert gathered his evidence. The State's expert examined the vehicle while it was impounded and collected evidence to determine where Colvin was standing when the shot was fired.

¶9 The District Court concluded that the State's "negligent" release of the impounded vehicle in the face of an order requiring disclosure "deprived the defense of the opportunity to investigate and prove their theory of the case. This is a fundamental violation of due process." Further, because the vehicle was released back to Michael Aja for daily use, the District Court concluded that its evidentiary value to the defense "is

4

now lost." The District Court concluded that this deprivation of evidence was a violation of Colvin's right to due process and required dismissal of the charge.

## STANDARDS OF REVIEW

¶10 A district court's decision on a motion to dismiss charges in a criminal case presents a question of law that this Court reviews de novo. *State v. Schauf,* 2009 MT 281, ¶ 13, 352 Mont. 186, 216 P.3d 740. Review is plenary, to determine whether the district court is correct. *State v. Hardaway*, 2001 MT 252, ¶ 64, 307 Mont. 139, 36 P.3d 900. Findings of fact are reviewed to determine whether they are clearly erroneous. *State v. Fregien,* 2006 MT 18, ¶ 8, 331 Mont. 18, 127 P.3d 1048. A district court's discretionary decisions are reviewed for abuse of discretion. *State v. Breeding*, 2008 MT 162, ¶ 10, 343 Mont. 323, 184 P.3d 313.

## DISCUSSION

¶11 *Did the District Court err in dismissing the charge against Colvin based upon his claim that the State failed to preserve exculpatory evidence?*

¶12 A criminal defendant has a right to obtain exculpatory evidence held by the government. The United States Supreme Court has established that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S. Ct. at 1196-97. The purpose of the *Brady* rule "is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197. Material evidence is evidence which is more than conclusory or speculative; a material

5

fact is one that is relevant to the cause of action or the defense, and requires resolution by the trier of fact. *Hopkins v. Superior Metal Workings*, 2009 MT 48, ¶ 5, 349 Mont. 292, 203 P.3d 803. A *Brady* due process violation depends upon "suppression of material evidence favorable to a defendant." *State v. Seifert*, 2010 MT 169, ¶ 14, 357 Mont. 188, 237 P.3d 669.

¶13 A *Brady* violation of due process occurs when the defendant establishes that the State possessed evidence that had exculpatory or impeachment value to the defense; the evidence was willfully or inadvertently suppressed; and that suppression prejudiced the defense. *State v. Root*, 2015 MT 310, ¶ 19, 381 Mont. 314, 359 P.3d 1088. The last element—prejudice to the defense—is sometimes stated in terms of a burden to show that the outcome of the proceedings would have been different had the evidence been provided.[1] *State v. Gollehon*, 1999 MT 210, ¶ 15, 296 Mont. 6, 986 P.2d 395. The defendant is not required to show that the evidence would have led to acquittal, *Kyles v. Whitley*, 514 U.S. 419, 434, 115 S. Ct. 1555, 1565-66 (1995), and a defendant meets his burden by showing that suppression of the evidence was prejudicial to the defense. *State v. Ellison*, 2012 MT 50, ¶ 16, 364 Mont. 276, 272 P.3d 646.

¶14 On appeal the State argues that the District Court should have held an evidentiary hearing before deciding the motion to dismiss; that dismissal is a severe sanction limited to egregious cases of governmental misconduct; that there was no showing of intentional

---

[1] In a case like the present one where there was no trial or plea, it will clearly be difficult to show or to determine whether the outcome of the proceeding would have been different had the evidence not been suppressed. That factor, therefore, is not pertinent to resolution of the present case but may be relevant in other cases, depending upon the facts.

destruction of the evidence; and that Colvin failed to establish the exculpatory nature of the evidence.

¶15   The State charged Colvin with attempted deliberate homicide.  An essential element of that offense is intent—the State must prove that the defendant acted "purposely or knowingly" to attempt to cause the death of another.  Section 45-5-102(1)(a), MCA.  Whether Colvin acted purposely or knowingly was an issue for both sides.  Colvin, for example, points to a purported statement by the victim that the gun was close to his face when it discharged.  As the District Court found, Colvin made a sufficient showing that the distance from which the shot was fired would be a critical issue regarding intent in this case.  A shot from a distance outside the vehicle would tend to support the State's charge that Colvin fired purposely or knowingly, while a shot fired adjacent to or inside the vehicle window would support Colvin's defense that the gun discharged accidently.

¶16   The State's expert concluded that the shot came from a distance of seven feet from the vehicle.  This conclusion was based at least in part on the evidence that the expert obtained during his inspection of the vehicle.  As the District Court found, the vehicle *was* the crime scene and after it was released could not be returned to the condition it was in when examined by the State's expert.  This, at a minimum, severely hampered any defense effort to examine and use the blood spatter, powder residue and other evidence from the vehicle.  Until the time the vehicle was released to Aja, the State clearly believed that evidence on and in the Jeep was important to determining what happened in the shooting.  The State retained an expert to examine the vehicle and the expert used

7

evidence gathered from that examination in reaching an opinion as to how the shooting happened.

¶17 The State argues that the evidence inside the Jeep "still exists" and that the defense is at fault for not pursuing it. However, this is just speculation as to the condition of the vehicle "crime scene" and the extent to which intervening time, use, cleaning and weather compromised important evidence. The State also argues that Colvin could obtain the same evidence that its expert obtained from the vehicle. The State asserts that Colvin could "recreate the shooting" by using the actual or a substitute vehicle. This is a novel suggestion, given that the blood spatter from the victim's wound is concededly one of the important factors that an expert would analyze.

¶18 The decision in *State v. Buckles*, 1999 MT 79, 294 Mont. 95, 979 P.2d 177, does not assist the State's position. The State charged Buckles with negligent homicide following a single-vehicle accident in which a passenger died. Law enforcement officers seized and impounded the vehicle, but subsequently released it. Buckles contended that this was a *Brady* violation; that examination of the interior of the vehicle could have revealed important evidence about whether he was the driver; and that the charge should be dismissed. However, since Buckles admitted to responding officers that he was the driver, he was unable to establish any reasonable probability that retention of the vehicle would yield a different result. *Buckles*, ¶ 12.

¶19 The State attempts to shift blame for this situation to the defense, arguing that if only the defense had examined the vehicle earlier, it would have been in its impounded condition. However, the defense motion for discovery specifically requested that the

State provide the vehicle for inspection, and at the time the State released the vehicle, the State was under an order to provide discovery. The State released the vehicle only 10 days after the State's expert examined it. Further, as to other seized material not at issue (keys and wallet), the State had taken the reasonable step of providing notice and obtaining leave of the Court to return those items. There is no reasonable way that the defense could have guessed that if it did not act to examine the untampered vehicle at some unknown time, the opportunity to do so would be lost. We agree that the loss of the original condition of the victim's vehicle was prejudicial to Colvin.

¶20   We find no basis to disturb the District Court's determination that the vehicle was the crime scene and that the blood spatter and gunshot residue on and in it were important evidence for the prosecution and the defense. We find no basis to disturb the District Court's conclusion that after the vehicle was released and used by Aja for a period of time, it was "no longer intact" as it existed at the time of the shooting or at the time the State's expert examined it.

¶21   The State contends that it was an abuse of discretion to dismiss the charge against Colvin as a result of the *Brady* violation rather than selecting some alternative outcome. However, the District Court had few real alternatives to dismissal. Precluding the State from using the evidence it gleaned from the vehicle, for example, would not assist Colvin in developing evidence to support his defense that he fired the gun close to the victim by accident. We are not persuaded by the State's speculation that the intervening use of the vehicle has not altered the essential blood spatter and gunshot residue evidence, and that Colvin could recreate the shooting and replicate the evidence.

¶22    The State further contends that dismissal of charges should be reserved for cases of egregious governmental conduct to hide or destroy evidence favorable to the defense. The State does not explain how the release happened in this case except to assert that it was done inadvertently. While there is no evidence of bad faith conduct by the State, it was at least reckless to release the vehicle while an order requiring its production to the defense was in place. The District Court had discretion to fashion a remedy under the facts and circumstances of the case, including dismissal. *State v. Halter*, 238 Mont. 408, 413, 777 P.2d 1313, 1316-17 (1989); *State v. Swanson*, 222 Mont. 357, 362, 722 P.2d 1155, 1158 (1986). In any event, based upon the clear holding in *Brady*, the inquiry should be upon whether the evidence was material to the case and how it impacted the defense, regardless of whether the evidence was lost through intentional or inadvertent conduct. The fundamental purpose of the *Brady* rule is not to punish the government for misconduct; it is to protect the due process rights of the accused. *Brady*, 373 U.S. at 87, 83 S. Ct. at 1197. There can be no real issue that the vehicle evidence here was material to the case for both the prosecution and the defense.

¶23    The State argues that it was error for the District Court to decide Colvin's motion to dismiss without holding an evidentiary hearing. However, there is no express requirement that a court considering a *Brady* issue must hold an evidentiary hearing. It may do so as a matter of discretion. *Halter*, 238 Mont. at 413, 777 P.2d at 1316-17. While the State speculates on appeal about the evidence it could have presented, it did not request a hearing in the District Court where these issues could have been addressed. The State also did not file any affidavits but simply responded by brief to Colvin's motion to

dismiss. The parties briefed the issues and the District Court was able to determine whether an evidentiary hearing would assist the decision. The District Court was within its discretion in determining whether to hold a hearing and we find no error. *City of Helena v. Wittinghill*, 2009 MT 343, ¶ 23, 353 Mont. 131, 219 P.3d 1244.

## CONCLUSION

¶24 We agree with the District Court's conclusion that the State's release of the vehicle was a violation of Colvin's right to due process and we affirm the order dismissing the charge.

¶25 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ LAURIE McKINNON
/S/ JAMES JEREMIAH SHEA
/S/ PATRICIA COTTER