FILED

11/10/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0673

DA 18-0673

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 283

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

RENIE RAYMOND JOSEPH FILLION,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC-16-255C
Honorable John C. Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Kathryn Hutchison, Assistant Appellate
Defender, Helena, Montana

      For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Marty Lambert, Gallatin County Attorney, Bjorn Boyer, Deputy County
Attorney, Bozeman, Montana

Submitted on Briefs:  August 12, 2020

Decided:  November 10, 2020

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Renie Raymond Joseph Fillion (Fillion) appeals his conviction entered in the Eighteenth Judicial District Court, Gallatin County, for felony Theft; felony Altering an Identification Number; and a misdemeanor count for Violation of a License Plate Requirement. We affirm.

¶2 Fillion presents the following issues for review:

1. *Did the District Court correctly deny Fillion's motion to dismiss, which was based on the State's alleged failure to preserve exculpatory evidence?*

2. *Did the District Court properly allow an out-of-court statement offered for the limited purpose of explaining an officer's conduct?*

3. *Whether, after correctly instructing the jury, the District Court appropriately exercised its discretion to refer the jury to instructions already provided?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 Nicholas Haskell (Haskell) is a motorcycle enthusiast and has owned custom choppers, Supermotos, and antique dirt bikes. Haskell owned a 2008 KLX450R Kawasaki, a rare model that Kawasaki only manufactured for a limited time. After Haskell purchased the motorcycle, he customized many features which made the bike unique and valuable. On May 3, 2016, Haskell drove his motorcycle to work in Bozeman, where it was stolen. Haskell notified the Bozeman Police Department and placed an ad on Craigslist with a photograph of the motorcycle, offering a $1,500 reward for information leading to its return.

¶4 Officer Engle of the Livingston Police Department received a call from David Hames (Hames), a citizen who explained he may have seen a stolen motorcycle in

2

Fillion's yard. Hames explained he had been at Fillion's house looking at other items when he saw a new motorcycle in Fillion's yard. Hames was suspicious because he did not believe Fillion could afford to purchase such an expensive motorcycle. Hames noted that he saw a similar motorcycle on Craigslist, which offered reward money for information leading to the return of the motorcycle. In response to Hames' information, Officer Engle went to Fillion's residence and noticed a motorcycle near Fillion's front door. Officer Engle could not approach the residence because of Fillion's pit bulls that were in the yard. However, Officer Engle could see the motorcycle's license plate and, after running a check on the plate number, learned it was registered to a trailer rather than a motorcycle. With that information, Officer Engle obtained a search warrant for the motorcycle. He transported the motorcycle to the police department where Haskell identified the unique, customized items of the motorcycle and said it was his. Officer Engle received a court order to release the motorcycle to the Bozeman Police Department. Several weeks later Haskell and a Bozeman police officer retrieved the motorcycle.

¶5 Numerous photographs of the motorcycle were taken after it was seized from Fillion. The VIN on the bike had been scratched and altered, and when the altered VIN was researched it came back to a 1981 Kawasaki and not the one stolen from Haskell. The permanent registration sticker on the bike had also been scratched and altered.

¶6 On July 21, 2016, the State filed an Information charging Fillion with the instant offenses. Prior to trial, the State returned the motorcycle to Haskell. In response, Fillion filed a motion to dismiss the charges on the basis that the State failed to maintain a

3

chain of custody concerning a primary piece of evidence—the motorcycle. The State responded that it would not be introducing the motorcycle as evidence during the trial, but that the motorcycle was still available to inspect and that defense counsel did personally inspect the motorcycle. The State also said it took multiple photographs of the motorcycle prior to returning it to Haskell, which depicted its condition immediately after it was seized from Fillion. The District Court held a hearing and denied Fillion's motion to dismiss. The District Court concluded Fillion advanced no actual theory or testing that Fillion could rely on or perform if the motorcycle were still in the State's possession.

¶7 The case went to trial in June of 2018. During Officer Engle's testimony, Fillion objected on hearsay grounds to Officer Engle's explanation that he initially went to Fillion's residence in response to a citizen's call from Hames. Ultimately, the District Court overruled the objection, finding that the statement was being offered not for its truth, but to explain the steps Officer Engle was taking in his investigation of a citizen's call. Significant to the issues here, the jury was fully instructed on the elements of each offense and Fillion did not object to the adequacy or completeness of any instruction given by the District Court. However, during jury deliberations, the jury submitted the following question: [Does] falsifying a VIN number of a motor vehicle apply to a stamped number on the actual vehicle or does altering a title or bill of sale fall under the same law? Following discussion with counsel, the District Court instructed the jury to refer to the instructions which had previously been given.

4

**STANDARDS OF REVIEW**

¶8 This Court exercises plenary review over constitutional questions, including *Brady* violations. *State v. Ilk*, 2018 MT 186, ¶ 15, 392 Mont. 201, 422 P.3d 1219; (*see Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194 (1963)). A district court has broad discretion in controlling the admission of evidence at trial; this Court reviews a district court's evidentiary ruling for an abuse of discretion. *State v. Colburn*, 2018 MT 141, ¶ 7, 391 Mont. 449, 419 P.3d 1196. This Court reviews a district court's decision to provide or deny the jury's request for additional information for an abuse of discretion. *State v. Bieber*, 2007 MT 262, ¶ 67, 339 Mont. 309, 170 P.3d 444.

**DISCUSSION**

¶9 *1. Did the District Court correctly deny Fillion's motion to dismiss, which was based on the State's alleged failure to preserve exculpatory evidence?*

¶10 A failure by the State to disclose exculpatory evidence to a defendant is a violation of the defendant's Fourteenth Amendment guarantee of due process. *Ilk*, ¶ 29. To assert a *Brady* violation, a defendant must establish: (1) the State possessed evidence, including impeachment evidence, favorable to the defense; (2) the prosecution suppressed the favorable evidence; and (3) had the evidence been disclosed a reasonable probability exists that the outcome of the proceedings would have been different. *State v. Weisbarth*, 2016 MT 214, ¶ 20, 384 Mont. 424, 378 P.3d 1195 (citing *Brady*, 373 U.S. at 83). The defendant bears the burden of proving each element of a *Brady* violation. *Ilk*, ¶ 30. The State does not need to gather evidence to aid in the defense but may not frustrate or hamper

5

an accused's right to obtain exculpatory evidence. *State v. Belgarde*, 1998 MT 152, ¶ 16, 289 Mont. 287, 962 P.2d 571.

¶11 Fillion asserts the State frustrated his right to obtain exculpatory evidence when it released the motorcycle to Haskell who altered and used it for a month prior to Fillion being charged with a crime. Fillion relies on *State v. Colvin*, 2016 MT 129, 383 Mont. 474, 372 P.3d 471 and *State v. Halter*, 283 Mont. 408, 777 P.2d 1313 (1989), to support his position. In *Colvin*, Colvin was charged with attempted deliberate homicide when he shot the victim who was seated in the driver's side of his vehicle. Colvin claimed he was holding the gun inside the driver's window when it accidentally fired. In contrast, the State's theory was that it was shot from several feet outside the vehicle. The State released the vehicle to the victim prior to trial without providing notice to defense counsel or the court. *Colvin*, ¶¶ 8-9. This Court held that the vehicle itself was the crime scene and the blood spatter and gunshot residue on it were important evidence for both the defense and prosecution. *Colvin*, ¶ 20. The car had been driven for months and cleaned. Therefore, the State's release of the vehicle was a violation of Colvin's right to due process. *Colvin*, ¶ 24.

¶12 In *Halter*, Halter was charged with stealing a bull and illegally branding it. *Halter*, 238 Mont. at 409, 777 P.2d at 1313. Before Halter's expert could examine the brand and make a comparison between the brand and Halter's branding irons, the bull was sold and slaughtered. *Halter*, 238 Mont. at 410, 777 P.2d at 1314. Halter moved to dismiss the charges based on the State's failure to preserve exculpatory evidence.

6

*Halter*, 238 Mont. at 409-10, 777 P.2d at 1314. This Court affirmed the district court's order dismissing the charges against Halter because Halter would be unable to adequately defend himself since the bull had been slaughtered. *Halter*, 238 Mont. at 413, 777 P.2d at 1317.

¶13    Here, Fillion has failed to set forth a theory under which the return of the motorcycle would have produced exculpatory evidence. He merely speculates that the return of the motorcycle somehow destroyed favorable evidence. *See State v. Robertson*, 2019 MT 99, 395 Mont. 370, 440 P.3d 17 (holding that Robertson offered nothing to indicate the video constituted favorable evidence). Fillion's counsel inspected the motorcycle; there were photographs taken of the motorcycle after it was seized; Haskell was amenable to allowing another inspection; and, critically, the motorcycle was still available for inspection at the time of trial. Fillion argues the actions of stripping off the black spray paint and removing the stickers destroyed evidence favorable to his defense. However, this evidence was captured, and documented thoroughly, in photographs.

¶14    To prove the State suppressed favorable evidence, Fillion had to offer some explanation or theory of why the photographs and invitation for personal inspection of the motorcycle were insufficient and amounted to a violation of his right to due process. Fillion, who bears the burden of proving each element establishing a *Brady* violation, has failed to prove the first element requiring that the evidence would have been favorable to the defense. Having failed to prove the first *Brady* element, it is unnecessary to address the remaining two.

7

¶15   *2. Did the District Court properly allow an out-of-court statement offered for the limited purpose of explaining an officer's conduct?*

¶16   "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). Hearsay is generally not admissible. M. R. Evid. 802. "A statement is hearsay only when the immediate interference the proponent wants to draw is the truth of the assertion on the statement's face. If the proponent can demonstrate that the statement is logically relevant on any other theory, the statement is nonhearsay." *Siebken v. Vonderberg*, 2015 MT 296, ¶ 22, 381 Mont. 256, 359 P.3d 1073. In *State v. Lawrence*, 285 Mont. 140, 167, 948 P.2d 186, 202 (1997), we first considered whether an out-of-court statement offered for the limited purpose of explaining an officer's conduct was hearsay. We adopted the reasoning of *People v. Tenorio*, 197 Colo. 137, 590 P.2d 952 (Colo. 1979), which explained:

> The statements were elicited only to establish the officers' reasons for initially going to the park and for drawing their guns after arrival there. The statements were not offered to show the truth of the content of the radio report or to establish that the defendant did in fact possess a weapon.

*Tenorio*, 590 P. 2d at 958.

¶17   There is a caveat, however; an officer's testimony is not admissible when it "[e]ffectively points the finger of accusation at [the] defendant." *Lawrence*, 285 Mont. at 167, 948 P.2d at 202. The reasoning of the Ninth Circuit in *Busby v. U.S.*, 296 F.2d 328 (9th Cir. 1961), is likewise informative:

> [W]hile it is clear that the testimony of officer McDonald concerned out-of-court assertions by third persons (i.e., what others had said to him), it

8

is equally clear that his testimony was not admitted to prove the truth of the matter asserted, i.e. that the appellants had actually done what others had said they had done. *This evidence was admitted merely to establish facts and circumstances upon which officer McDonald could justify his routine investigation* and actions such as asking the appellants to step out of the automobile.

*Busby*, 296 F.2d at 332 (emphasis added).

¶18 Here, the State offered Hames' statement to explain why Officer Engle went to Fillion's house in the first place. Hames' statement was not offered for its truth and it did not point the finger of accusation at Fillion. It merely established how the next step in the investigation proceeded. Hames made initial contact with Officer Engle for the purpose of referring Officer Engle to Fillion's house. Once Officer Engle was on the sidewalk outside of Fillion's house he began to make his own personal observations, i.e. reading the license plate on the motorcycle and confirming that the plates were licensed to a trailer and not the motorcycle. From there, a search warrant issued. Thus, Hames' statement was offered only to show why Officer Engle went to Fillion's residence and how the investigation proceeded. Accordingly, it was not hearsay and the District Court was correct in holding it was admissible.

¶19 *3. Whether, after correctly instructing the jury, the District Court appropriately exercised its discretion to refer the jury to instructions already provided?*

¶20 When a court fully and correctly instructs the jury as to the law, it was not an abuse of discretion to refuse to further instruct the jury. *Bieber*, ¶ 67. Section 46-16-503(2), MCA, provides:

> After the jury has retired for deliberation, if there is any disagreement among the jurors as to the testimony or if the jurors desire to be informed on any

9

point of law arising in the cause, they shall notify the officer appointed to keep them together, who shall then notify the court. The information requested may be given, in the discretion of the court, after consultation with the parties.

¶21 Fillion argues the District Court erred in referring the jury to instructions already given when the jury requested clarification on the count charging Fillion with Altering an Identification Number. The jury's question concerned whether falsifying a VIN number on a motor vehicle only applied to a stamped number or if it could refer to altering the title or bill of sale as well. The District Court ultimately decided that providing an additional instruction would create unnecessary confusion since Fillion was never charged with altering a title or bill of sale.

¶22 The charge of Altering an Identification Number, contained at § 61-3-604(1), MCA, and set forth in Jury Instruction 6, provides that a person may not "willfully remove[] or falsif[y] an identification number of a motor vehicle, trailer, semitrailer, pole trailer, or motor vehicle engine." In contrast, the charge of Alteration or Forgery of Certificate of Ownership or Certificate of Title, under § 61-3-603, MCA, provides: "a person who alters or forges or causes to be altered or forged any motor vehicle, trailer, semitrailer, or pole trailer certificate of ownership or certificate of title or any assignment of a certificate of ownership or certificate of title or who holds or uses any certificate or assignment knowing that the certificate has been altered or forged is guilty of a felony." Although there may be similarities between the two codified sections—§§ 61-3-603, -604(1), MCA—Fillion was only charged with the crime of altering an identification number under § 61-3-604(1), MCA. We conclude the District Court did not abuse its discretion when it

10

refused to instruct the jury on an offense for which Fillion was not charged. While the State presented evidence that the bill of sale was fraudulent and forged, Fillion was never charged with the crime of altering a title or bill of sale. The District Court fully and fairly instructed the jury initially and no objections were made by either party. Instructing the jury to refer to instructions already given, to avoid the risk of confusion with an additional uncharged offense, was not an abuse of discretion.

## CONCLUSION

¶23 The District Court correctly denied Fillion's motion to dismiss based on the State's alleged failure to preserve exculpatory evidence. The District Court properly allowed an out-of-court statement offered for the limited purpose of explaining the officer's conduct. Finally, the District Court did not abuse its discretion, after it correctly instructed the jury and no objections were made by the parties, that the jury should refer to the instructions previously given to answer their question.

¶24 Affirmed.

/S/ LAURIE McKINNON

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR

11