FILED

03/09/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0161

DA 20-0161

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 60N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ROBERTO SALAMAN-GARCIA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. DC 18-504
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Carl B. Jensen, Attorney at Law, Great Falls, Montana

      For Appellee:

        Austin Knudsen, Montana Attorney General, C. Mark Fowler, Assistant
Attorney General, Helena, Montana

        Joshua A. Racki, Cascade County Attorney, Susan L. Weber, Deputy
County Attorney, Great Falls, Montana

Submitted on Briefs:  February 17, 2021

Decided:  March 9, 2021

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Roberto Salaman-Garcia was a carnival ride operator who was convicted after jury trial of two counts of felony sexual assault and two counts of misdemeanor sexual assault for sexually touching females, both adult and minor, while buckling them into seats on an amusement ride at the 2018 State Fair in Great Falls. He challenges the District Court's denial of his motions to dismiss for lack of speedy trial and for a new trial.

¶3 After law enforcement received complaints from the victims, Salaman-Garcia was arrested on July 30, 2018.[1] At the arraignment on August 22, trial on the charges was set for October 22. On August 29, Salaman-Garcia's defense counsel moved to extend the motions deadline, and on August 31, moved to continue the trial date, stating additional time would be needed for discovery and filing of pre-trial motions. The motion was granted and the trial date was vacated. On December 24, and again in February 2019, the State requested the District Court to set a new trial date. On February 19, 2019, the trial was

---

[1] In its findings, the District Court noted that Salaman-Garcia had been arrested, released, and rearrested "as more complaining witnesses came forward," but that July 30, 2018, was the earliest arrest date it could find in the record. In any event, the parties do not dispute the District Court's calculation of 294 total days of delay in the proceeding.

reset for May 20, 2019, at which time the trial was ultimately conducted. On April 8, defense counsel moved for dismissal on speedy trial grounds. The District Court conducted a hearing on May 3, and entered its findings of fact and conclusions of law denying the motion on May 12. The District Court compared the delay experienced in this case with other cases decided by this Court, applied the *Ariegwe*[2] factors, and reasoned that "the 294-day pretrial delay in this case was essentially unavoidable" and did not violate Salaman-Garcia's right to a speedy trial.

¶4    A couple weeks after Salaman-Garcia's trial, the State learned of an internal investigation concerning an officer who had testified at the trial, and advised Salaman-Garcia's counsel and the District Court. Salaman-Garcia filed a motion for new trial on June 24, 2019, and the District Court conducted a *Brady/Giglio*[3] hearing on the motion. At the close of the hearing, the District Court denied the motion from the bench. Salaman-Garcia appeals.

¶5    A speedy trial violation presents a question of constitutional law, which we review de novo to determine whether the court correctly interpreted and applied the law. *State v. Stewart*, 2017 MT 32, ¶ 6, 386 Mont. 315, 389 P.3d 1009 (citation omitted). We review the factual findings underlying a speedy trial analysis for clear error. *Stewart*, ¶ 6 (citation omitted). "This Court exercises plenary review over constitutional questions, including

---

[2] *State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815.

[3] *Brady v. Maryland*, 373 U.S. 83, 87-88, 83 S. Ct. 1194, 1196-97 (1963); *Giglio v. United States*, 405 U.S. 150, 154-55, 92 S. Ct. 763, 766 (1972).

3

*Brady* violations." *State v. Fillion*, 2020 MT 283, ¶ 6, 402 Mont. 84, 475 P.3d 725 (citation omitted).

¶6    The right to a speedy trial is guaranteed by the United States Constitution and the Montana Constitution. Reviewing courts must analyze speedy trial motions by balancing four factors: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right to a speedy trial; and (4) the prejudice to the accused as a result of the delay. *Ariegwe*, ¶ 20. No single factor is dispositive and each must be considered under the totality of the relevant circumstances. *Ariegwe*, ¶ 112. The delay threshold to trigger a speedy trial analysis is 200 days. *Arigewe*, ¶ 41. Here, under the first factor, the total length of delay was 294 days, making a speedy trial analysis necessary.

¶7    Under the second factor, the District Court determined the 84-day delay to the first trial setting was institutional delay. Regarding the 210-day delay to the second and final trial setting, the District Court ruled the delay "resulted from a combination of [defense counsel's] request to continue the October 22 setting and docket congestion." Regarding the latter, the District Court explained:

> [T]he Eighth Judicial District is extraordinarily congested. This Court typically has 10 to 15 criminal jury trials set every other Monday, and sometimes for several consecutive weeks at a time. Only three courtrooms with jury boxes and a fourth with no jury box are available to accommodate the competing demands of four district court judges and a standing master[.]

The District Court held that "[t]he only reasonable method the Court can conceive of to capture this joint responsibility for the delay is to apportion it equally between the two sides," citing *State v. Couture*, 2010 MT 201, ¶ 93, 357 Mont. 398, 240 P.3d 987, and

4

designated the State's portion of the delay as institutional, weighing less heavily against the State. Salaman-Garcia does not challenge this apportionment on appeal.

¶8 Under the third factor, the District Court assessed all of Salaman-Garcia's requests of record, including his request for a continuance, and concluded that "the totality of the entire record . . . does not indicate persistent manifestations of desire or efforts to be brought to trial earlier than Mr. Salaman-Garcia has been." Regarding the considerations of prejudice under the fourth factor, the District Court did not find the conditions of Salaman-Garcia's incarceration to be oppressive, found "no basis to apportion his claimed anxiety to delay rather than the prospect of facing 4 counts of Sexual Assault," and no proof that the delay had impaired any witness recollection. Balancing the factors, the District Court held that the First Factor, length of delay, weighed slightly in Salaman-Garcia's favor, but that the amount of delay was not unusual in that jurisdiction, especially in a serious felony case. The court held that Factor Two weighed in favor of the State, with the State's 189-day delay being institutional, and the remaining 105 days being attributable to Salaman-Garcia. For the reasons set forth above, the court weighed Factor Three and Factor Four in favor of the State, concluding there was no prejudice to Salaman-Garcia and that the balancing of the factors clearly required denial of the motion.

¶9 A couple weeks after the trial, the State learned that Officer Steven Fox, who had testified in Salaman-Garcia's trial, was being investigated for making a false statement on an insurance claim. The State disclosed the information to the defense and District Court. Salaman-Garcia filed a motion for a new trial, arguing, "[b]ased on the fact the officer in question had a pending investigation that could impeach his testimony that was not

5

disclosed, the interests of justice require that the Defendant be granted a new trial." The State objected, arguing that Fox's role in the investigation and trial was minor, and he had spoken to only one of the victims. The District Court conducted a hearing on the motion, and after hearing the evidence, ruled from the bench:

> [W]e had some law enforcement witnesses, who in my mind from where I was sitting during the trial, were basically extras in this case. And I remember thinking while Deputy Fox was testifying, "Why did they even call this guy?" And he's the only witness that the State has a problem with now. And I cannot say that if [defense counsel] had had this information to impeach him with during the trial that there is a reasonable probability that the outcome would have been different. Neither can I say in the words of the *Reinert* case, which is an exposition of the *Brady* standard, "that the likelihood of a different result is great enough to undermine confidence in the outcome of the trial." If they had this kind of evidence about Detective Cunningham, we'd be having a different discussion. . . . But this evidence impeaches the testimony of somebody who I regard as no more than a bit player in the trial, and that means it doesn't undermine my confidence in the outcome. So the motion is denied.

¶10 "The scope of required disclosure is limited to exculpatory evidence and any other constitutionally material evidence tending to show that a prosecution witness is unreliable, biased, has an interest or motive to testify falsely, or has a character for untruthfulness." *City of Bozeman v. McCarthy*, 2019 MT 209, ¶ 14, 397 Mont. 134, 447 P.3d 1048 (citation omitted). "Nonexculpatory information is constitutionally material only if nondisclosure would be reasonably likely to 'undermine confidence' in the fairness of the trial or sentencing determination under the totality of the circumstances." *McCarthy*, ¶ 14 (citation omitted). Non-exculpatory impeachment evidence is constitutionally material "only where the subject witness provides the key 'evidence linking the defendant(s) to the crime, or

6

where the likely impact on the witness's credibility would . . . undermine[] a critical element of the prosecution's case. '"  *McCarthy*, ¶ 14 (citation omitted).

¶11    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions.  This appeal presents questions regarding speedy trial and disclosure that are controlled by settled law, which the District Court correctly applied in denying the motions.

¶12    Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR